THE TEXAS ELEVATOR AND COMPRESS COMPANY v. T. B. MITCHELL.

No. 6393.

1.   **Pleading—Same Cause of Action.**—Plaintiff sued for value of 250 bales of cotton which had been delivered to defendant and not returned on demand, the property of plaintiff.   After two years plaintiff by amendment alleged that of the 250 bales of cotton he had deposited three, and that by purchase he had become the owner of the others.   The defendant pleaded limitation of two years to the amended petition. *Held*, that the cause of action relied upon in the amended petition was the same declared on in the original.

2.   **Pleading — Evidence in Rebuttal.** — Action for value of 250 bales of cotton owned by plaintiff and detained by defendant.   The defendant pleaded that the cotton had been destroyed by fire without negligence on its part.   *Held*, that this allegation of absence of negligence could be rebutted by the plaintiff by affirmative testimony showing negligence of defendant without pleading it.   Revised Statutes, article 1917, provides that it shall not be necessary to deny any special matter of defense pleaded.

3.   **Care of Compress Company—Ordinary Care.**—That the compress company was required to use only ordinary care and prudence for the safe keeping of cotton stored with it is well settled.   Whether such care was exercised in a given case must depend upon the testimony upon the subject.

4.   **Fact Case — Negligence.** — See facts held to prove want of ordinary care on part of the compress company for cotton deposited in its care and lost by fire.   From the facts a judgment for the loss sustained.

APPEAL from Dallas. Tried below before Hon. Geo. N. Aldredge. The opinion contains a statement.

*J. M. McCormack* and *Leake & Henry,* for appellant. — 1. Where an amendment sets up a new cause of action it is subject to all defenses which might have been made if the suit had been instituted at the time the amendment was filed, including the statute of limitations. Williams v. Randon, 10 Texas, 74; Governor v. Burnett, 27 Texas, 37.

2. The law requires no more of a warehouseman than the exercise of ordinary care and diligence in keeping goods entrusted to him. Schmidt v. Blood, 24 Am. Dec., 143; Jones on Bail., 97; Story on Bail., 444; Edwards on Bail., 284; Ang. on Car., 45; Hutch. on Car., 62; Hatchet v. Gibson, 13 Ala., 587; Gibson v. Hatchet, 24 Ala., 201; Myers v. Walker, 31 Ill., 353; Buckingham v. Fisher, 70 Ill., 121; Cowles v. Pointer, 26 Miss., 253; Ducker v. Barnet, 5 Mo., 97; Holtzelaw v. Duff, 27 Mo., 392; Rodgers v. Stophel, 32 Pa. St., 111; Dimmick v. Railway, 18 Wis., 471; McCollum v. Porter, 17 La. Ann., 89.

3. A warehouseman is not liable as a common carrier, but only for ordinary diligence. Ducker v. Barnet, 5 Mo., 97; Titworth v. Winnegor, 51 Barb., 148; Kemp v. Curtis, 9 Wend., 60.

4. Warehousemen are not liable if without fault or negligence on their part the property is destroyed by an accidental fire. Rice v. Nixon, 97 Ind., 97; 49 Am. Rep., 490; 8 Wait's Act. and Def., 302.

5. A warehouseman is not liable because his warehouse is not built out of brick or stone or made fire proof, unless he falsely represents to the person whose goods he receives that his building is so constructed, and by such false representation deceives his customer. Nor is he liable for not having the other appliances mentioned in said assignment unless he makes himself so by such false representations. Vincent v. Rather, 31 Texas, 77; Hickey v. Morrell, 102 N. Y., 454; Hatchet v. Gibson, 13 Ala., 587; Jones v. Hatchet, 14 Ala., 743.

6. The implied undertaking of a warehouseman is not that he will at all events keep the goods safely, but that he will use reasonable and ordinary care and diligence in keeping them; and unless he has failed to use due care in keeping the goods he has not broken his contract and is not liable for damages to the goods. Willett v. Rich, 6 East. Rep. (Mass.), 660; 8 Wait's Act. and Def., 302, supp.; Schmidt v. Blood, 24 Am. Dec., 143, and note.

7. In an action to recover damages for the loss or injury of goods stored in the defendant's warehouse the burden is upon the plaintiff to show that the damage was caused by the negligence of the defendant. This burden never shifts. If it is shown that the warehouseman on the demand of the goods by the owner failed to deliver them or to account for such nondelivery, a prima facie case of negligence is established. If the refusal to

deliver is then explained by evidence showing that the goods at the time of the demand had been destroyed by fire and that the defendant was therefore unable to deliver them, the plaintiff must then show affirmatively that the fire was occasioned by or was not prevented by reason of some negligence or omission of due care on the part of defendant. Claflin v. Meyer, 74 N. Y., 260; Willett v. Rich, 6 East. Rep., 660; 3 Wait's Act. and Def., 620–622; 8 Wait's Act. and Def. (supp.), 303; Schmidt v. Blood, 24 Am. Dec., 143, note.

8. The proofs must be according to the allegations of the parties, and if the proofs go to matters not within the allegations the court can not judicially act upon them as a ground for its decision. Facts not put in contestation by the pleadings can not be proved, and if proved can not form the basis of a judgment. Able v. Lee, 6 Texas, 432; Holliman v. Rogers, 6 Texas, 91; Yancy v. Norris, 27 Texas, 49; Ramsay v. McCanley, 2 Texas, 190; Guess v. Lubbock, 5 Texas, 540; Coles v. Kelsey, 2 Texas, 541; Paul v. Perez, 7 Texas, 345; Rivers v. Foote, 11 Texas, 662; McGreal v. Wilson, 9 Texas, 426; O'Conner v. Silver, 26 Texas, 606; Gillies v. Wofford, 26 Texas, 76; Field on Dam., sec. 367; Abb. Trial Ev., 555, 556; Claflin v. Meyer, 31 Am. Rep., 467.

*W. B. & G. G. Wright,* for appellee. — 1. A warehouseman must exercise ordinary care and diligence in taking care of property entrusted to him. Whart. on Neg., secs. 569, 573.

2. The testimony clearly sustains the findings of the court upon the facts and the law.

HOBBY, Judge. — The appellee T. B. Mitchell, who was plaintiff in the lower court, sued the Texas Elevator and Compress Company on the 17th day of January, 1884, to recover the value of 250 bales of cotton which he alleged had during the months of September and October, 1883, been delivered by him to defendant to be compressed, and when so compressed they were, he averred, to be returned to him upon the surrender by plaintiff of the receipts for said cotton which had been executed by defendant therefor, together with the payment by plaintiff of the customary charges for storage and compressing. A tender of said receipts and a demand for said cotton was alleged, as was also defendant's refusal to deliver the same.

The value of the cotton was averred to be $60 per bale, its total value being $20,000. An exhibit was attached to the petition giving marks, weight, etc., of each bale. On March 13, 1884, defendant filed a general demurrer and general denial.

On December 6, 1886, plaintiff filed an amended petition, alleging, in substance, that he had delivered three bales of cotton at the time stated to defendant, for which the latter gave its receipt, and that various other

persons, naming them, had delivered to defendant at the time stated certain bales of cotton, giving the number delivered by each, amounting in the aggregate with the three first mentioned to 250 bales. That defendant had given its receipt for said cotton to said persons; that plaintiff for a valuable consideration had become the owner of said cotton and the receipts therefor had been transferred to him. A statement of the marks and weights was attached as an exhibit, which was the same as that attached to the original petition. That said cotton was to be compressed and redelivered to the holder of said receipts. Its value was placed at $15,000. A demand and refusal was alleged.

On January 3, 1887, defendant filed its answer excepting to the amended petition because it presented a new cause of action, and that more than two years had elapsed since the cause of action sued on accrued and before the filing of said amended petition.

Defendant alleged that the cotton had been, in October, 1886, before it was demanded, destroyed accidentally by fire without any negligence on its part, and pleaded also the two years statute of limitation and other pleas.

The cause was tried by the court alone, a jury having been waived, and judgment was rendered in favor of the plaintiff for the value of the cotton destroyed, to-wit $15,200. This judgment is appealed from. The court filed conclusions of law and fact, which it will be necessary to refer to under assignments questioning their correctness.

It is claimed by appellant that the averments contained in the amended petition show that more than two years had elapsed since the cause of action therein stated accrued and before the date of its filing.

As before explained, the original petition was filed on January 14, 1884. It alleged the delivery of the cotton to defendant in September and October, 1883. It alleged also this delivery to be by plaintiff of 250 bales of cotton. The exhibit attached to the petition described each by weight, mark, etc. The amendment filed December 6, 1886, alleged the delivery by plaintiff of only three bales, and the remaining 247 bales were averred to have been delivered by seventeen different persons whose names were set out. The receipts for these executed by defendant it was alleged plaintiff had become the owner of, and the same exhibit was attached showing that the same cotton was referred to in the amended petition as that the value of which was sued for in the original petition.

No new cause of action was thus presented in the amended petition. It was but a more complete statement of the grounds of the plaintiff's suit originally outlined in his first plea, and not, we think, a new statement of a different cause of action. In all of its material features it was substantially the same as originally set forth. Railway v. Irvine, 64 Texas, 533; Railway v. Pape, 73 Texas, 501; Railway v. McGowan, Id., 355.

Appellant argues that as there is no allegation of negligence upon the

part of the defendant in the pleadings of the plaintiff, therefore the judgment can not stand although negligence be proved.

The petition alleged the delivery by plaintiff of the cotton to defendant to be compressed and returned to the former, and the total failure and refusal of defendant so to do. Defendant pleaded the destruction of the cotton thus delivered by fire, without any negligence or fault on its part, and that the fire originated on a portion of its premises not then occupied or used by defendant or under its control, but occupied and controlled by W. C. Howard & Co., who had leased the same from defendant as an elevator for the purchase of grain; that shelling corn was a part of Howard's business, which was done by machinery; that the fire originated in the room where said shelling was carried on, etc., and was the result of an unforeseen accident, etc. These pleadings necessarily raised the issue whether the destruction of the cotton was the result of accident or was caused by defendant's negligence, which was denied in the answer. It was a proper and logical issue growing out of and raised by the combined pleadings of the parties. Under these pleadings the defendant was entitled to the benefit which might ensue from the establishment by proof of the fact that the destruction by fire of the cotton was accidental and without fault on its part. So, too, under them we think the plaintiff was likewise entitled to whatever advantage might accrue to him from proof of the fact that such destruction was occasioned by want of proper care and prudence on the part of defendant and its servants and employes. Railway v. Timmermann, 61 Texas, 663.

It has been held that in order to make an issue upon the facts alleged in the answer it is not necessary for the plaintiff to file a written denial. McDonald v. Tinnon, 20 Texas, 245.

Article 1197 of the Revised Statutes provides that "It shall not be necessary for the *plaintiff* to deny any special matter of defense pleaded by the defendant, but the same shall be regarded as denied unless expressly admitted."

The reason upon which the rule is founded under our system of pleading requiring the pleader to distinctly allege the facts on which he relies, whether they constitute the cause of action or ground of defense, is that the adverse party may be informed before the trial and prepare his evidence for the contest, and that he may not be surprised by testimony of facts he can not reasonably be expected to be prepared to meet. Lemmon v. Hanley, 28 Texas, 227.

In the present case the special defense to the cause of action was that the cotton was destroyed without negligence or fault of defendant. The entire testimony of the plaintiff was admitted without objection. On cross-examination of plaintiff's first witness defendant proved that the cotton was destroyed by fire. This was followed up after plaintiff's prima facie case was closed by the evidence of several witnesses in support of defend-

ant's special plea. The cross-examination of these witnesses, together with defendant's evidence in rebuttal, developed the facts upon which the court's finding was based as to the negligence of defendant.

In a suit for the recovery of personal property, where the petition contained no allegation of the value of the property, it was held to be error to admit evidence of such value in the absence of an allegation to that effect if objection be made; but the defect was held to be cured by verdict when no objection was made to the introduction of the evidence. Gillies v. Wofford, 26 Texas, 77; Carter v. Wallace, 2 Texas, 206.

Looking to the statute we have cited and keeping in view the reason of the rule that the averments and proof must correspond, and applying it to this case, if the plaintiff had alleged that the destruction of the cotton was caused by defendant's negligence, the latter could not, we think, have adduced on the trial stronger evidence in contradiction of this allegation than was introduced by the defendant in support of its special defense.

Under this state of case we do not think it can be successfully claimed that the defendant could have been surprised at the introduction of plaintiff's testimony in rebuttal as to its negligence, when it sought to absolve itself from all liability by the affirmative proof of the absence of negligence on its part. That appellant was required to use only ordinary care and prudence is well settled. Whether such care was exercised in this case is to be determined from all the evidence on the subject.

The facts found by the court upon this branch of the case were, in substance, that the cotton was destroyed by fire, which "originated in the shuck room, where the steam corn sheller was being operated by W. C. Howard & Co. under lease from defendant." That said Howard & Co., "in January, 1881, leased from defendant an elevator immediately adjoining and attached to defendant's warehouse, in which plaintiff's cotton was stored. A steam corn sheller was put into the elevator by Howard & Co., which they began to use." A part of the shucks and cobs was carried off and a part used as fuel for the engine. This the court found to be dangerous, and that the cotton stored in defendant's warehouse was liable to be burned by reason thereof, and that this was negligence on the part of defendant. The court also found that the preparations and facilities for putting out or combatting a fire were wholly inadequate, and that the failure to provide sufficient means for this purpose was negligence. It was also found that the dividing wall between the elevator and the warehouse was wood; that it should have been stone or other incombustible material, and the failure of defendant to have such incombustible material was negligence.

In addition to these findings the court further found that the defendant's manager in charge of the compress and warehouse was incompetent and negligent, and that "at the time of the fire did almost nothing to protect the cotton in keeping of defendant."

It appears from the evidence that the appellant had in January, 1881, prior to the time appellee stored the cotton in its yard or compress, leased the elevator adjoining its warehouse to Howard & Co. for the purpose of operating a steam corn sheller. This was run by Howard & Co. by means of a steam engine and other machinery usual in an elevator, and which it was proved increased the hazard or danger to the cotton stored in defendant's warehouse. But appellant had no control whatever over the elevator, except as a landlord, at the time of the fire which destroyed the cotton.

The press and elevator were in the same yard, and "the cotton was all around the elevator." The engine and corn sheller were next to the cotton warehouse, and the dividing wall between them consisted of wood. In operating this steam corn sheller the shucks and cobs were used as fuel for the engine, and a considerable. quantity of them had accumulated around and near the engine. The fire which destroyed the cotton originated in the elevator, and it was communicated "to the shucks and cobs lying about on the floor."

The evidence as to the facilities for protecting the cotton in defendant's custody and for arresting a fire, as well as the evidence as to the care and efforts used by defendant's manager, was conflicting.

There was testimony to the effect that "the arrangements at the compress to protect the cotton were such as were usual in interior towns." So, too, that "Mr. W. (the manager) paid good attention to his business, and seemed to be a good manager." And it may be said of the defendant's evidence generally that it tended to show that no ordinary care or prudence would have saved the cotton.

On the other hand it was proved that "there were no adequate arrangements for the protection of the cotton;" that "they were not such as were prudent in protecting warehouses stored with cotton like that." A witness, H. T. Thompson, testified, in substance, that the facilities for putting out a fire consisted of "a little water hydrant there they kept in the yard to sprinkle the furnace with and about three dozen buckets hanging around and some barrels of water." There was other evidence of a like character tending to show that the arrangements for extinguishing a fire were inadequate, and that "there had been previously a fire or two right in the cotton, which each time was promptly put out by the aid of buckets of water." Several witnesses testified to the character of efforts made by the defendant's employes to save the cotton after the fire had been discovered and during its progress; they likewise testified to the conduct of the manager of defendant's compress. The evidence of one witness was that "he made no effort to save the cotton after the fire was discovered;" that "he did not direct his hands to save any; the efforts made to accomplish this were made by the owners of cotton there and disinterested citizens after an offer had been made by an insurance agent to pay $1 a bale for

all cotton saved." Another witness stated that "had the superintendent and hands manifested any energy double the amount of cotton could have been saved." About 500 bales were saved, it appears, out of about 2600 or 3000 stored with defendant. That "if they had rolled the cotton out and shut the door he did not think a bale would have been burned outside of the elevator."

"The superintendent," testified a witness, "did not," he thought, "know what he was doing." Witness suggested to him "to roll the cotton out of the door." To this advice, it seems, he paid no attention. "After the fire had gotten under headway," continues the witness, "they commenced rolling it out at a point (indicated by witness on a diagram) which was the means of communicating the fire to the cotton on the platform and the other cotton standing on the ground." This witness testified that "there was no wall between the elevator and the cotton."

The foregoing extracts from the evidence constitute the strongest proof adduced on the trial of the alleged negligence of appellant. There was evidence on the other hand in conflict with this and tending to show that appellant was guilty of no negligence.

A careful examination of the whole evidence leads us to the conclusion that it supports the finding of the court to the effect that if the appellant had exercised the care a prudent person under similar circumstances ought to have used the cotton would not have been destroyed.

We are of opinion that there is no error in the judgment, and that it should be affirmed.

*Affirmed.*

Adopted June 24, 1890.

Justice Henry not sitting.