MEXICAN CENTRAL RAILWAY CO., LIMITED, v. HARRY MITTEN.

Delivered May 13, 1896.

1.   Jurisdiction—Injury in Foreign Country—Lex Loci.

In an action between citizens of this State for damages for an injury inflicted in a foreign country, where the wrong is one for which a remedy was given at common law, the presumption will prevail that the common law is in force in the foreign state, and the remedy will be applied.

2.   Pleading—Amended Petition—New Cause of Action not Set up.

Plaintiff's third amended petition alleged that he was injured by the wreck of a railway train of the defendant on which he was a passenger, caused by the "giving way of a bridge." His fourth amended petition, upon which the trial was had, alleged that the wreck of the train "was occasioned by a defective roadbed within a few feet of a bridge." The two petitions were almost identical in other respects. Held, that a new cause of action was not set up by the latter.

3.   Railway Company—Damages for Future Suffering—Charge of Court.

In an action for personal injuries, the charge permitted plaintiff to recover damages for "what he may suffer hereafter in consequence thereof." Held, that the charge was not erroneous, since it made the consideration of future suffering as an item of damages contingent on its existence, which is all that is required.

4.   Damages for Personal Injuries—Amount not Excessive.

Where plaintiff had his leg broken in two places, and also had ribs broken, and the broken leg is shorter than the other, and continually pains him, and curvature of the spine has resulted, the injuries being permanent, a verdict for $5000 was not excessive.

APPEAL from El Paso.   Tried below before Hon. C. N. BUCKLER.

*Falvey & Davis*, for appellant.—An amended petition that requires of the defendant the production of entirely different evidence to make its defense thereto, from the evidence required to make its defense to the pleading amended, sets up a new cause of action, and limitation runs until the filing of such amendment.   Plaintiff's third amended original petition set up as his cause of action, that defendant had negligently constructed a bridge; that the same was insufficient and out of repair, and that when the train upon which plaintiff was riding ran upon said bridge, it gave way and threw the train into an arroyo, and thereby caused plaintiff's injuries.   The only evidence that defendant was called on by said petition to offer, to make its defense, was evidence to show that the bridge was properly constructed, was sufficient and in good repair, and did not give way when the train ran upon it and throw the train into an arroyo, and thereby injure plaintiff.

By plaintiff's fourth amended original petition, filed more than four years after plaintiff received his injuries, he sets up as the cause of the injury that defendant's roadbed was defective (not the bridge); that the train was thrown from the track by reason of such defect, and plaintiff thereby injured.   Therefore the evidence defendant was called on to present by the third amended petition would be entirely irrelevant in the case made by the fourth amended original petition, and to meet the case made by it the defendant would be required to produce proof not before necessary, at a time when the law conclusively presumes it is not accessible.   Rev. Stats., arts. 1191, 3353; Railway v. Richards, 32 S. W. Rep., 99; Connoly v. Hammon, 58 Texas, 22; Erskine v. Wilson, 28 Texas, 81; Railway v. Scott, 75 Texas, 84; Burgham v. Talbot, 63 Texas, 273; Railway v. Hennessey, 12 S. W. Rep., 609; Lynch v. Ortlieb, 28 S. W. Rep., 1017; McLane v. Belvin, 47 Texas, 500; Railway v. Pope, 73 Texas, 502; Morales v. Fish, 66 Texas, 189; Railway v. Wylor, 158 U. S., 285; Smith v. Railway, 50 Fed. Rep., 760; Benton v. Railway, 41 Fed. Rep., 744; Scoville v. Glassner, 79 Mo., 454; Clark v. Smith, 39 Mo., 498.

*Leigh Clark, A. G. Wilcox* and *T. T. Teel*, for appellee.—1.   The laws of Mexico were not alleged and proven in this case to be different from those of Texas, and in the absence of such allegation and proof they will be presumed to be the same.   Stevenson v. Car Co., 26 S. W. Rep., 112; Railway v. Graham, 34 S. W. Rep., 138; Armendiaz v. Serna, 40 Texas, 305; Hill v. George, 5 Texas, 91; Jones v. Laney, 2 Texas, 342.

2.   Neither the subject matter nor the rights or liabilities of the par-

ties were changed by plaintiff's fourth amended original petition, and therefore it did not set up a new cause of action. Smith v. Bogenschutz, 19 S. W. Rep., 667; 1 Ency. of Pl. and Pr., text No. 7, entitled "Summary Statement of the Rule," p. 564; Rey v. McGown, 73 Texas, 355; Usher v. Skidmore, 28 Texas, 622; Hill v. Clay, 26 Texas, 653; Coles v. Portis, 18 Texas, 157; Jones v. Burgitt, 46 Texas, 291; Kinney v. Lea, 10 Texas, 155; Lee v. Boutwell, 44 Texas, 152; Hastings v. Kellogg (Texas Civ. App.), 24 S. W. Rep., 846; Railway v. Borsky, 2 Texas Civ. App., 545; Railway v. Barron, 4 Texas Civ. App., 546; Sweetzer v. Claflin (Texas Sup.), 17 S. W. Rep., 769; Silberg v. Tulling, 82 Texas, 523; Thouvenin v. Lea, 26 Texas, 614; Railway v. Dodd (Ark.), 27 S. W. Rep., 227; McCracken v. Railway, 58 N. W. Rep., 1085; Smith v. Railway, 56 Fed. Rep., 458; 5 C. C. App., 557; Carter v. Cotter, 14 S. E. Rep., 467; Shearrer v. Meddleton, 50 N. W. Rep., 737; 88 Mich., 621; Daley v. Gates, 65 Vt., 59; Cassell v. Cooke, 8 S. and R. (Pa.), 268; Stewart v. Kelley, 16 Pa. Stat., 160; Maxwell v. Harrison, 8 Ga., 61; Stevenson v. Mudgett, 10 N. H., 338; 19 S. E. Rep., 308; Van de Hoar v. Van Domseler, 56 Iowa, 671; Smith v. Railway, 56 Fed. Rep., 458; Ball v. Claflin, 5 Pick. (Mass.), 303; Smith v. Palmer, 6 Cush. (Mass.), 513; Pillsbury v. Springfield, 16 N. H., 565; Wilson v. Spofford, 10 N. Y. Supp., 413.

FLY, ASSOCIATE JUSTICE.—On the 9th day of July, 1889, a wreck occurred on the railway of appellant near Chihuahua, Mexico, in which appellee was injured, and he instituted suit to recover $25,000 damages.

It was alleged, in the petition upon which the case was tried, that appellee was a newsboy on the train of appellant on his way from El Paso, Texas, to the City of Mexico; that he was a passenger thereon, arrangements having been made by his employers with appellant by which he was trasported between the points named from time to time; that on the date above named the train on which appellee was a passenger was derailed and wrecked through the negligence of appellants, and appellee seriously and permanently injured. The negligence was alleged to consist in failure to keep the roadbed in proper condition, in running the train at a rapid and reckless rate of speed, failure to send out track walker after a heavy rain that just previously had fallen, and the recklessness of the employes in refusing to obey instructions to run slowly and to stop and examine all bridges before attempting to cross the same.

The case was tried by a jury, and resulted in a verdict and judgment for $5000 for appellee.

We find that the allegations in the petition were substantially proved. Appellee was a passenger on the train of appellant, and was seriously and permanently injured through the negligence of appellant in failing to use reasonable care in the construction and repair of its road-bed, and in not using ordinary care in running its train and in inspecting its

roadbed after a heavy rain. The following order .was given to the conductor on the wrecked train: "Heavy rains during night between Sans and Chihuahua. You are the first train over this track. Run very slowly and carefully, and stop and examine all bridges before you pass or cross." No examination of the bridge was made before the accident, and the train was running at the rate of over thirty miles an hour when the accident occurred. The breach in the approach to the bridge was open and apparent and would have been discovered by the exercise of ordinary care.

In the third amended petition it was alleged that appellee was a resident of El Paso County, Texas, and that appellant was a corporation duly incorporated by and under the laws of the State of Massachusetts, and was engaged in operating a railroad between El Paso, Texas, and the City of Mexico, in the Republic of Mexico, and had a local agent and representative residing in the City of El Paso. It was also alleged that the injury was inflicted on appellee by appellant a few miles north of Chihuahua, in the Republic of Mexico.

It is urged, through the first and second assignments of error, that no cause of action was shown by the petition that was cognizable by the courts of Texas, because the injury was inflicted in a foreign country, and it does not appear from the petition that the laws of Mexico would entitle appellee to recover damages of appellant by reason of the injuries; that it is not shown that appellee could not have subjected appellant to the jurisdiction of the courts of Mexico, and no necessity is shown in the petition for the courts of Texas to assume jurisdiction of the cause. These questions were not raised in the lower court, but for the first time in this court. The only authority cited in support of the propositions is the case of Mexican National Railway v. Jackson, 33 S. W. Rep., 861, recently decided by the Supreme Court of this State.

From that greatest and most perfect system of laws evolved by the minds of our English ancestors from the necessities, exigencies and difficulties surrounding them through the centuries of their history, have American States drawn largely for the laws and system of jurisprudence by which our rights are preserved and our wrongs redressed, and to this reservoir of legal lore it is not only interesting but profitable and instructive for us to go when questions of perplexity and doubt present themselves for solution. The policy of England in the matter of opening her courts to litigants who present themselves with their grievances at her door, has been of the most liberal, enlightened and generous character. Not only is it the boast of the English people that their courts are ever open to protect the rights and redress the wrongs of those aggrieved by acts done within their own confines, but with a few simple conditions, the privilege is extended in all transitory actions, no matter where the cause of action may have arisen. Under the wise and beneficent operation of that system, except in certain cases, a remedy can be found in English courts for torts committed in places outside the territorial jurisdiction of those courts. The rule is thus stated by Sir Fred-

MEXICAN CENTRAL RY. CO. v. MITTEN.

erick Pollock, the erudite scholar and distinguished writer: "1. The act may be such that although it may be wrongful by the local law, it would not be a wrong if done in England. In this case no action lies in an English court. * * * 2. The act, though in itself it would be a trespass by the law of England, may be justified or excused by the local law. Here also there is no remedy in an English court. * * * But nothing less than the justification by the local law will do. 3. The act may be wrongful by both the law of England and the law of the place where it was done. In such a case an action lies in England, without regard to the nationality of the parties, provided the cause of action is not of a purely local kind, such as trespass to land." Webb's Pollock, Torts, pp. 237-239. In the case of Phillips v. Eyre, cited by Pollock, the principle is thus stated: "As a general rule, in order to found a suit in England for wrong alleged to have been committed abroad, two conditions must be fulfilled. First, the wrong must be of such a character that it would have been actionable if committed in England. * * * Secondly, the act must not have been justifiable by the law of the place where it was done."

These rules are plain, enlightened, reasonable and just, and have been the guide of English courts in the administration of justice in the classes of cases mentioned for many years. A review of American authorities shows the adoption of the same rules in America. Judge Cooley, in his great work on Torts, says: "It is a general rule that for the purpose of redress it is immaterial where a wrong was committed; in other words, a wrong being personal, redress may be sought for it wherever the wrong-doer may be found. To this there are a few exceptions, in which actions are said to be local, and must therefore be brought not only within the country, but also within the very county where they arose. The distinction between transitory and local actions is this: If the cause of action is one that might have arisen anywhere, then it is transitory; but if it could only have arisen in one place, then it is local." Cooley on Torts (2d ed.), p. 551. In support of the text the English case of Mostyn v. Fabrigas, Cowp., 161, is cited. In that case the governor of a British colony was prosecuted in England, and a heavy judgment recovered against him, for an assault and imprisonment of the plaintiff without authority of law in the colony. In another cited English authority, it was held to be unimportant whether the foreign tort was or was not committed within territory subject to the British Crown; the only proviso being that, to support an action, an act complained of must have been wrongful or punishable where it took place, and that whatever would be a good defense to the action, if brought in the foreign State, would be a good defense everywhere.

In the case of Leonard v. Railway, 84 N. Y., 50, it was said: "The rule no doubt is, that all common law actions for an injury in a foreign country are transitory in their character, and may be brought in another State or country besides that in which they originated. In contemplation of law, the injury arises anywhere and everywhere." This was

the enlightened English rule, as we have heretofore seen, and in every State of the Union, unless it be Texas, the same rule has been adopted. Where the action is given by statute, and is not one that arose at common law, it becomes necessary for the plaintiff to establish the existence of a law in the foreign State that gives the right of action as well as in the State where the case is tried. However, where the wrong is one for which a remedy was given at common law, the presumption will prevail that the common law is in force in the foreign State, and the remedy will be applied. "Actions for injuries to the person committed abroad are sustained without proof at to the lex loci, upon the presumption that the right to compensation for such injuries is recognized by the laws of all countries." McDonald v. Mallory, 77 N. Y., 548.

It is insisted, however, that the rules governing such cases in England and America have been swept aside by the decision of the Texas court in the case of the Mexican National Railway v. Jackson, 33 S. W. Rep., 857, and the mere statement in the petition that the tort was committed in the Republic of Mexico showed that the District Court of El Paso County had no jurisdiction. In the Jackson case, the laws of Mexico touching on the case were alleged and proved, and a large portion of the opinion of the Supreme Court is devoted to the task of showing that there existed such radical dissimilarity between the laws of Mexico and Texas that the courts of the latter State could not enforce them. So far as the opinion rests on the dissimilarity of the laws, it does not necessarily become a matter of discussion in this case where the laws of Mexico were not proved. Our views on that subject are clearly set forth in the opinion delivered by Chief Justice James in the Jackson case, 32 S. W. Rep., 230.

Dissimilarity of the laws, however, was not the sole ground upon which the aid of our courts was denied to Jackson, but other and, to us, novel reasons were given why the right should be denied, among the number being the difficulties that would beset Texas courts in determining the meaning of Mexican laws. On this point it is said, "We understand the Mexican courts are not governed by precedent, and we have no access to reports of adjudicated cases of those courts, from which we could ascertain their interpretation of these laws." If it be true that the Mexicans have no precedents, and keep no record of adjudicated cases, it would seem that a Mexican court would be in no better position to follow in the track of the decisions than would an American court, and while "it is well settled that, if one State undertakes to enforce a law of another State, the interpretation of that law as fixed by the courts of the other State is to be followed"; still it does not follow that, where the other State has not interpreted its laws, or has failed to record its interpretations, this State should therefore refuse to extend a remedy for a wrong inflicted on a citizen within the borders of such foreign State. In many of the cases in which jurisdiction has been assumed or held to attach in the courts of one State when the wrong was perpetrated in another, the offending party had removed from the latter State, but we

have found no case where the fact of removal was made the ground for assuming jurisdiction.

Our courts either have jurisdiction of the class of cases we are discussing or they have not, and the question of whether a man has voluntarily resorted to our courts, or been forced into them, or whether commerce between Mexico and Texas will be injured or protected by compelling the payment by a corporation of damages for the wrongs it has inflicted, or the condition of our dockets, can have no weight or force in determining jurisdiction. These are considerations that might possibly address themselves to the notice of legislatures, but not to the determination of courts. Courts are not at liberty to assume or decline jurisdiction, upon speculative grounds, or for reasons of public policy. Percival v. Hickey, 18 Johns., 257.

We are not willing to subscribe to the doctrine that citizens of Texas who have suffered wrongs, transitory in their nature, in a foreign country at the hands of one who has his legal domicile in this State, before he can obtain redress at the hands of our courts, must show that he has been refused aid in the foreign courts, and make it appear that he comes to the courts of his own country unwillingly and as a last resort. Jurisdiction of a cause should not be made to depend upon any such state of circumstances. If the construction placed upon the decision in the Jackson case be the true one, and some of its expressions would seem to justify the construction, it is a practical denial of remedies for wrongs that may be inflicted by one of our citizens upon another in Mexico, by relegating him to a trial in the courts of a country where the laws are said to be enforced without precedent or authority, and which laws are claimed to be so uncertain and obscure that our courts cannot undertake to construe them. We are not willing to subscribe to such doctrine and will not extend the scope of the decision referred to beyond the purview of the facts of that case. We hold that the petition showed a cause of action, and that the District Court of El Paso County. had jurisdiction of the case.

There is no merit in the third assignment of error. It was the duty of the district judge, under the circumstances, to permit a reinstatement of the cause after a non-suit had been taken by appellee. The non-suit resulted from the action of the court in holding that there was such a variance between the allegations and proof as to the cause of the wreck as was fatal to a recovery, and if the cause went to the jury he would instruct a verdict for the defendant. A refusal to reinstate, under the facts, would have been good cause for reversal of the judgment. Lockett v. Railway, 78 Texas, 211; Cotton v. Lyter, 81 Texas, 10.

In the third amended petition it was alleged that on July 9, 1889, appellee, a newsboy, was lawfully on a passenger train of appellant, on his way from El Paso, Texas, to the City of Mexico, and "that on the 9th day of July, or the second day after plaintiff so as aforesaid boarded said train, and within a few miles north of the City of Chihuahua, said

train was wrecked by the giving way of a bridge over an arroyo, and the cars composing said train were thrown with great force and violence down to the bed of said arroyo and were piled one upon another in a wrecked and demolished condition." etc.  In the fourth amended petition, which was filed April 18, 1895, and upon which the case was tried, it was alleged, after stating that the injury was caused through the negligence of appellant, "that said wreck was occasioned by a defective roadbed within a few feet of a bridge over said arroyo."  The two petitions are almost identical in setting up the cause of action, the only difference pointed out by appellant being the allegation as to the cause of the wreck.  Appellant interposed the plea of limitation to the cause of action as alleged in the fourth amended petition, pointing out the difference between it and the former statement of the cause of action.  The plea was not sustained, and error on this ground is urged in this court.

The plea of limitation, if sustained at all, must be upheld on the ground that the last petition set up a new and different cause of action from the one formerly pleaded.  The cause of action in all the pleadings was an injury inflicted upon appellee through a wreck caused by the negligence of appellant.  In the last pleadings, as in those going before, the same cause of action was alleged.  It was the same wreck, at the same time and place, inflicting the same injuries upon appellee, from which resulted the same damages.  To all intents and purposes, it was the identical cause of action.  There was no change, except as to the statement that the defect was in the approach to the bridge, instead of the bridge itself.  In the case of Bigham v. Talbot, 63 Texas, 271, cited by appellant, the court, after holding that the amendment set up an entirely new cause of action, said:  "If, however, there had been any allegations in the first amended petition in any way retaining even as part of the cause of action therein asserted that which was asserted by the original petition, and afterwards reasserted by second amended petition, that would have been sufficient to prevent the running of the statute after the original petition was filed."

In all the authorities cited by appellant, while the original subject matter was retained in the amendment, a new cause of action was set up, such as an amendment setting up a verbal promise to pay a debt, which was sued on as evidenced by a promissory note, or an amendment setting up a debt due on a note, when the original suit was on the allowance of a claim by an administrator.  Those cases do not apply to this case.  In this suit, the demand is for damages growing out of the same transaction, but depending upon different evidence for its establishment, and was not a new cause of action.  Cotter v. Parks, 80 Texas, 539; Sweetzer v. Claflin, 82 Texas, 513.

In the case of Foster v. Smith, 66 Texas, 680, the original petition set up as cause of action a judgment recovered by the plaintiff against the defendants, which had not been paid, and alleged that no execution had ever issued on it.  In the amendment it was alleged that execution had been issued within a year after its rendition, but that nine

years had elapsed since the last one had issued. It was held that it did not set up a new cause of action. In the celebrated case of Landa v. Obert, 78 Texas, 33, where new facts were pleaded, it was held that the cause of action remained the same. The following cases are also in point: Railway v. Irvine, 64 Texas, 533; Railway v. Pape, 73 Texas, 501; Railway v. McGowan, id., 355; Elevator Co. v. Mitchell, 78 Texas, 64; Hughes v. Smith, 83 Texas, 499. The case we are considering comes clearly within the purview of Hill v. Clay, 26 Texas, 650.

We have given this subject close attention, more from the fact that the point has been urged with much vigor both in brief and oral argument, than that it presented any difficulty in its solution. We think it clear that the plea of limitation could not be maintained.

The court gave this charge to the jury: "If you find for the plaintiff, you are instructed that the measure of his damage is a sum which you may find from the evidence would fairly and reasonably compensate him for the injury sustained (if any); and in order to arrive at that amount, you would be authorized to take into consideration the character of his injuries, whether permanent or otherwise, his sufferings, both mental and physical (if any), in consequence of such injuries, and what he may suffer hereafter in consequence thereof, and for time lost while disabled from such injuries (if any), and his impaired ability to earn money in the business plaintiff was accustomed to follow prior to and subsequent to the accident; but if plaintiff has been able to earn as much money since his injuries as before, in said business, you could not consider that claim in arriving at the amount of damages which you may find plaintiff to be entitled to, if to any amount."

That portion of the charge allowing the jury to consider future mental and physical suffering in arriving at the amount of damages is assigned as error, because it should have limited appellee's right to recover for such future suffering to such as he showed that he would suffer. The charge makes the consideration of future suffering, as an item of damages, contingent on its existence, and that is all that is required or that appellant demands. The criticism of the charge on the ground set out in the assignment is not well founded.

Appellee had a leg broken in two places, near the hip and near the knee, and also had ribs broken. The broken leg is shorter than the other, and continually pains appellee, and curvature of the spine has resulted. The injuries are permanent. A verdict for $5000 was not excessive.

The judgment will be affirmed.

*Affirmed.*