## MANN COMMISSION CO. v. BALL.

### No. 12585.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 9, 1932.

Rehearing Denied Feb. 6, 1932.

W. H. Lipscomb, of San Angelo, Culp & Culp, of Gainesville, and L. J. Wardlaw, of Fort Worth, for appellant.

Slay & Simon and Richard Simon, all of Fort Worth, and Murphy & Murphy, of Gainesville, for appellee.

BUCK, J.

In its original petition the Mann Commission Company, styled a private corporation, sued Elbridge Ball, of Cooke county, for commission for the sale of a ranch of 19,158 acres in San Saba county, which the plaintiff alleged defendant had listed with it at a price of $13 an acre, payable one-fourth in cash and the balance on terms to suit the purchaser, and appellee agreed to pay 5 per cent. commission should a sale be made of said land.

Plaintiff alleged that on or about October 1, 1927, at great expense, effort, and trouble, it carried a purchaser for said ranch from San Angelo, Tex., to San Saba county, and showed said property to said prospective purchaser; that on another occasion plaintiff showed said property to a prospective purchaser, and on both of said occasions the defendant herein was present, and this plaintiff, acting through J. Walter Mann, told defendant that the Mann Commission Company had procured a prospective purchaser, to wit, L. P. Powell, of Big Lake, Tex., and said Powell had promised to go to San Saba county and look at said land, and he believed that Powell would purchase the same. Plaintiff further represented that on several occasions from December 1, 1927, up to and including May 12, 1928, plaintiff had written letters to defendant advising him that L. P. Powell was interested in the purchase of said ranch, and within the near future thought the trade would be closed with him. Plaintiff alleged that on May 12, 1928, he sold said property to Powell for a total consideration of $244,268.31. Plaintiff further alleged that, by reason of defendant listing said property with plaintiff, and by reason of its efforts in showing said property to L. P. Powell, it was the procuring cause in the sale of said land, and had earned the commission of $12,213.41. This petition was filed May 17, 1928.

On May 16, 1929, plaintiff filed its first amended petition, in which plaintiff alleged that it was a corporation. On January 19, 1931, plaintiff filed its second amended original petition, in which it alleged for the first time that, at the time of listing the ranch, plaintiff was a copartnership, consisting of Clay Mann and J. Walter Mann, then doing a commission and brokerage business in San Angelo, Tex.; that, after said lands had been listed for sale by defendant with said copartnership, said partnership, consisting of Clay Mann, J. Walter Mann, and their broth-

er, Arthur Mann, mutually agreed to create a corporation, under the name of Mann Commission Company, with a capital stock of $10,000, which stock was to be subscribed and paid for, in full, by the partners, and it was then and there mutually agreed by and between the three Manns that all properties, as well as all commissions, then owned by said copartnership, or which might thereafter accrue or become due, under or by virtue of existing listing contracts or agreement with said copartnership, should, upon such accrual, be considered as, and become the property of, said corporation; and it was further agreed by and among all of said Manns that said partnership should make all reasonable efforts to sell the properties which had been listed with it, and thereby earn such commissions as had been agreed upon by said copartnership; that thereafter, and during the latter part of January or the early part of February, 1928, and at a time when said copartnership was discussing and negotiating with the said L. P. Powell for the purchase by the latter of said lands, and when the latter had agreed with said copartnership to make an inspection thereof, defendant telegraphed said commission company that said ranch and the lands of which it consisted was not for sale, at which time the plaintiff alleges said lands were for sale, and defendant then intended to sell said lands to said L. P. Powell, if it was possible for him to do so, which intention was perfected on or about May 12, 1928, for the consideration of $249,109.50.

Plaintiff prayed that it have judgment against defendant for the sum of $12,455.47, with interest at the rate of 6 per cent. per annum from and after May 12, 1928.

Defendant filed his second amended answer January 19, 1931, in which he denied that plaintiff is a corporation, duly incorporated as alleged in its first amended petition. Defendant represented that plaintiff's right to do business as a corporation in the state of Texas has been forfeited, so that it no longer has the privilege or right to use the Texas courts either to prosecute or defend an action at law. This part of defendant's answer was sworn to by Richard U. Simon, attorney for defendant.

Defendant excepted to paragraph 1 of plaintiff's second amended petition, wherein he alleged that plaintiff was incorporated to engage in the general brokerage and commission business, consisting of buying and selling lands, properties, and live stock for others, for the reason that the statutes and laws of Texas do not authorize or permit a corporation to engage in the business of buying and selling lands and live stock.

Defendant's second amended answer was quite comprehensive, and consisted of some 11 pages of pleadings. It contained a prayer to make E. E. Fagg, who was alleged to be the procuring cause of the sale, a party defendant, and, in case judgment should be against defendant, that defendant have judgment over against said Fagg for any amount adjudged against the defendant.

The cause was tried before the court without the intervention of a jury, and the court overruled defendant's plea in abatement, as set out in paragraph 1 of defendant's second amended answer. The judgment in overruling said plea in abatement used the following language: "That as to the defendant's plea in abatement as set out in paragraph 1 of the defendant's second amended answer, which denied that the plaintiff was a corporation duly incorporated under the laws of Texas, but on the contrary that the plaintiff's right to do business had been forfeited for failure to pay the franchise tax; and the undisputed evidence with reference to such plea in abatement being that, due to the failure of the plaintiff to pay its franchise tax, its right to do business in Texas was properly forfeited by the Secretary of State of the State of Texas on July 12, 1929, but that this suit was originally filed on the date shown by the clerk's file mark on the original petition herein, the law is with the plaintiff, and the defendant's plea in abatement should be and the same is hereby overruled, to which action of the court the defendant excepted."

The judgment also overruled defendant's exception, as stated in paragraph 9 of defendant's second amended answer, which alleged that the contract theretofore alleged to be existing between the defendant and the copartnership was a personal contract relating to the sale of lands, and called for personal service to be rendered, and was wholly incapable of being assigned or in any way transferred to any one else without the acquiescence of the defendant. The court also overruled special exception set out in paragraph 3 of defendant's second amended answer, which alleged that plaintiff's business as a corporation had been wholly illegal and void, because there is no authorization under the Texas statutes for a corporation to engage in a general brokerage and commission business, consisting, among other things, of buying and selling lands, and other properties and live stock for others. The court sustained a special exception set out in paragraph 18 of defendant's amended answer, which said, as set out in the petition: "Because it is clearly shown on the face of the petition that any cause of action which arose as against the defendant arose on May 12, 1928, at the very latest date, because more than two years have elapsed since said date and before this second amended petition was filed, and because this second amended petition is an entirely new cause of action from that set out in any prior pleadings by the plaintiff, and because this action as set out in the plaintiff's second amended petition is

barred by the Statute of Limitations of the State of Texas, which requires any action not on written contract or otherwise expressly excepted, to be brought within two years from the accrual thereof."

The court held that this exception was sustained. From a judgment sustaining defendant's plea of limitation, the plaintiff has appealed to this court.

There is no statement of facts in the record, and the defendant below relies on the pleadings to sustain its exception and assignments.

### Opinion.

Appellant urges that the trial court erred in sustaining the plea of limitation, and that, where the prior petition, filed before the bar of the statute has become complete, contains any allegation of fact, relied upon in the pleadings filed after the bar has become complete, essential to plaintiff's recovery under the amended pleading, it cannot be said that the latter sets up any new cause of action.

Both appellant and appellee cite the case of Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707, 709, by Judge Brown of the Supreme Court. In that case the opinion states that it is very difficult to give any general definition of the phrase "cause of action" which would apply to all cases alike, and few courts have attempted to do so. Judge Brown sets out the tests laid down by which to determine the identity of causes of action as follows: "(1) Would a recovery had upon the original bar a recovery under the amended petition? (2) Would the same evidence support both of the pleadings? (3) Is the measure of damages the same in each case? (4) Are the allegations of each subject to the same defenses? 1 Am. & Eng. Enc. Pl. & Prac. p. 556. We are of opinion that the second and last furnish the best tests by which to determine the matter before us, and we can safely say that if the same testimony would not support the allegations in each of these pleas, and if the same defenses could not be interposed to each of them, they are not identical, and therefore the amended petition presents a new cause of action."

Appellant seems to question the fact that the later decisions have adhered to the rules laid down in the above-cited case, while appellee claims that the rule as laid down in that case is the guide now.

Paraphrasing the language of Chief Justice Gallagher in Wood v. Ingram, 275 S. W. 397, 399, of the Waco Court of Civil Appeals, it is held that:

Clearly plaintiff could not have two recoveries for the same damages suffered by him as a result of the same eviction from the same premises; therefore a recovery under either allegation of the original petition or those of the amended petition would be a complete bar to a recovery under the alle- gations of the other petitions. Substantially the same evidence on all contested points, such as the existence of the listing contract, plaintiff's procurement of a purchaser, able, ready, and willing to buy on the terms upon which the sale was actually made to such purchaser by the defendant; and the plaintiff's damages, resulting from the defendant's refusal to pay the commission, as agreed, would support the allegations of both petitions.

In that case it is further said:

"Where, as in this case, an express contract is declared on in a pleading filed before limitation has run, and the contract alleged in the amended pleading, filed after the bar of limitation would be complete, is substantially the same as the contract alleged in such former pleading, and differs therefrom only in minor matters of description, a more liberal rule applies in determining whether such last amendment sets up a new cause of action. Strict identity in such matters of description is not required."

The case of Gordon v. Mackey (Tex. Civ. App.) 30 S. W. 586, is urged by appellant as being in point. It is there said:

"In the original petition filed in this suit, appellant alleged that appellee was indebted to him in the sum of $4,300, for services rendered by him in preparing plans and specifications for a certain building in San Antonio, and superintending the construction thereof. That petition was filed on March 28, 1894, the claim being alleged to have been due on November 2, 1892. On December 19, 1894, an amended petition was filed in which it was alleged that the contract for the services was made by appellee with Gordon & Laub, a firm consisting of appellant and D. C. E. Laub, and that after the contract was made, and before the money was due, the firm of Gordon & Laub had been dissolved, all the claims and accounts of the firm being transferred and assigned to said Gordon, and among the number the claim herein sued on. The amendment was filed over two years after the claim became due. Appellee filed exceptions to it, setting up that the amendment alleged a new cause of action, and was barred by the statute of limitations of two years. The exceptions were sustained, and the cause dismissed. We are of the opinion that the amended petition did not set up a new cause of action, and it was error to sustain the exceptions. If appellant owned the claim at the time of the institution of the suit, it was immaterial with whom the contract was made,—whether the partnership or the individual. The supreme court of Alabama, in passing upon a case where, in the original complaint, it was alleged, as in this, that the contract was with the individual suing, and in an amendment that the contract was made with a partnership of which the plaintiff was a member, and that he had bought the claim, held that 'the amended complaint introduced

no new cause of action, so as to be barred by the statute of limitation of three years, which was pleaded. It only corrected a supposed misdescription in account or demand already in suit.' Sublett v. Hodges, 7 So. 296, 88 Ala. 491. In the case of Elevator Co. v. Mitchell, 78 Tex. 67, 14 S. W. 275, Mitchell had sued the elevator company for the conversion of 250 bales of cotton, which he alleged that he had delivered to it to be compressed, and that he had been given receipts for the same. After the time when the claim would have been barred by limitation, had no action been instituted, the plaintiff filed an amended petition, alleging that he had not delivered or obtained receipts for the cotton, with the exception of three bales, but that it had been delivered by others, and he had bought up the claims, the defendant excepted to the amendment, on the ground that it set up a new cause of action and was barred by limitation. The supreme court held that the petition did not set up a new cause of action. 'It was but a more complete statement of the grounds of the plaintiff's suit originally outlined in his first plea, and not, we think, a new statement of a different cause of action. In all of its material features it was substantially the same as originally set forth.' In the case of Sweetzer v. Claflin, 82 Tex. 515, 17 S. W. 769, an amended petition was excepted to because 'the note sued on originally is shown to have been executed and delivered to the plaintiffs directly, and this now sued on by amendment is alleged to have been executed and delivered to one I. Lewis,' but the supreme court held that it was the same cause of action, and that the only difference in the allegations is in regard to the means by which the plaintiffs became the owners of the note. We are of the opinion that the judgment should be reversed, and the cause remanded."

In the rather recent case of Word Supply Co. v. Stribling, 35 S.W.(2d) 270, by the Austin Court of Civil Appeals, it is said, quoting from the headnotes:

"Petition to recover price of machinery from buyers 'individually and as copartners' held sufficient to toll limitation statute and charge buyers individually.

"It appeared that seller's original petition alleged buyers were liable individually and as copartners; that one of buyers denied partnership under oath, whereupon seller, by supplemental petition, alleged he was personally liable; that suit continued to be one upon sworn account; and that same evidence would have established buyer's individual liability under either original or supplemental pleadings."

◼ Neither of these three cases has been passed on by the Supreme Court, but they seem to state the law. The only difference in the original and first amended petition and the second amended petition was the difference as to the identity of the person or persons with whom the original contract by defendant below was alleged to have been made. In the original and first amended petition, the contract was alleged to have been made by the corporation, while in the amended petition the contract was alleged to have been made by one of two partners, who, with their brother, formed the corporation, and conveyed to the corporation any rights that the partnership had in the cause of action. In all of the pleadings, the plaintiff was the corporation, and we conclude that the limitation was stopped by the filing of the first two petitions. Appellee cites the case of Williams v. Randon, 10 Tex. 74, in which it was held that, where the original pleading set up a verbal contract, and the amended pleading was founded upon a written order of the defendant, the latter set up a new cause of action which would be barred by limitation if not filed within the proper time. The court there further held that the amendment set up a new and distinct cause of action; that it was for a different amount, and that it was founded on the written order or request of the defendant; that it presented a claim of a higher character, and carried different attributes from the cause of action in the original petition. We do not question the correctness of this ruling. But we conclude that the trial court erred in sustaining the plea of limitation.

◼ Appellee urges that the trial court erred in failing to sustain his plea in abatement, which sets out that appellant's right to do business as a corporation in the state of Texas had been duly forfeited, and that appellant no longer had the right or privilege of access to any of the courts of the state of Texas.

In Stephens County v. McCammon (Tex. Com. App.) 40 S.W.(2d) 67, the court held that corporations had the right to transact business when contract was executed and breach occurred, though forfeiting right thereafter for failure to pay franchise, and that they were authorized to sue for breach of contract independent of revival of right to do business, citing article 7091, Rev. Civ. Statutes, and Constitution, art. 16, § 18, and art. 1, § 16. We overrule this cross-assignment.

◼ Appellee also urges that the court erred in not sustaining the special exception set up in paragraph 3 of appellee's answer, which challenged the propriety of the incorporation of the appellant, for the reason that there is no statutory provision authorizing a corporation to be formed for the purposes which appellant alleged itself to have been formed for; that is, buying and selling lands. The corporation was formed for such purposes, and we do not believe that in this collat-

eral attack upon the formation of the corporation appellee was in a position to urge that the corporation was formed for an illegal or unauthorized purpose.

Appellee also urges that the trial court erred in overruling and not sustaining his special exception as set out in paragraph 10 of appellee's answer, for the reason that appellant's pleading clearly indicates that the contract upon which appellant brought suit was ultra vires, and that appellee was indirectly interested in such contract so as to obviate any question of estoppel as against appellee. He urges, as cited in Ramsey v. Tod, 95 Tex. 614, 69 S. W. 133, 93 Am. St. Rep. 875, opinion by Chief Justice Gaines of the Supreme Court, that it has been settled once and for all that a legal corporation can engage in business under only one subdivision of article 1302; that is, in buying and selling lands, without any legal authority to do so. There is no question that the corporation was authorized under the granting of its permit to do business to buy and sell lands, even though the permit to do business was not authorized by the statutes, and we conclude that the appellee in this collateral attack was not in a position to question the authority of the secretary of state to issue such authority to do business as a corporation. The plaintiff's petition sets out that the original contract was made by the plaintiff, a partnership, and defendant. At that time plaintiff was not a corporation but a partnership.

Appellee also urges that the trial court erred in overruling and not sustaining appellee's special exception as presented in paragraph 9 of appellee's second amended answer, for the reason that a contract empowering any one to sell lands upon a commission basis is such a personal contract as to be incapable of assignment, especially to a corporation. He urges that the contract to sell the land of another calls for personal service on the part of the agent; that the landowner obviously relies upon the personal initiative and integrity of the agent and realizes that it is the personal contact and efforts of the agent which will result in the sale and the earning of the commission, and that the alleged assignment of this purpose was illegal. It will be remembered that the contract originally relied upon was made by the partnership, and that the corporation subsequently formed was composed of two brothers who had formed the original partnership and a third brother who went in with them to form the corporation. Much of the service which plaintiff alleged it performed had been performed prior to December 7, 1927, when the petition alleges that the corporation was organized and permitted to do business. It was but a continuance of the purpose under the corporation, and two of

the same partners in the corporation were in the former partnership, and one of these parties who claims to have exercised efforts towards the sale of the land was of the original partnership. Hence we do not believe there is any error in overruling this assignment.

It is the judgment and order of this court that the judgment of the trial court be reversed and the cause remanded for further proceedings not inconsistent with this decision.

### On Appellee's Motion for Rehearing.

Appellee urges that the case of Bigham v. Talbot & Cropper, 63 Tex. 271, decides this case, and that we did not discuss said case in our original opinion. In the cited case, plaintiff filed a petition, as shown in Bigham v. Talbot, 51 Tex. 450, based on this order:

" 'Mr. S. Bigham—Dear Sir: You will please pay to Cropper & Talbot all moneys due and will be on mail contract route from Camp Colorado to Meridian and from Hamilton to Comanche up to July, 1875. This, 14th of November, 1874.

" 'Yours truly, W. H. Woodburn.'

"Which was accepted, as follows:

" 'I accept the within order for all amounts that may be due from and after the 30th of September, 1874. This, October 28, 1874.

" 'Sam W. Bigham.' "

Bigham was a subcontractor himself on these routes. He sublet to W. H. Woodburn. Woodburn transferred the contract for a portion of the time to Overstreet & Bonner, and he transferred the remainder of the time to Overstreet & Talbot. Overstreet transferred his interest therein to Talbot & Cropper, and on the 14th day of November, 1874, Woodburn gave an order to Talbot & Cropper on Bigham for all moneys due and to be due on the contract between them, which order was accepted by Bigham as to all amounts that might be due after September 30, 1874. Plaintiffs below, Talbot & Cropper, asked judgment on amount of contract and liquidated damages for $1,000.

Bigham, who was a resident citizen of Coryell county, the suit being filed in Comanche county, demurred to the jurisdiction of the court because the petition did not state affirmatively such facts as would give it jurisdiction over his person. This was in effect his plea of privilege to be sued in Coryell county. Judge Bonner, speaking for the Supreme Court, held that there were some general allegations in the petition which, abstractly considered, would have given the court jurisdiction, yet the pleadings, taken as a whole, in connection with the exhibits made a part thereof, did not present such a case as, over the objection of the defendant, authorized the court to take jurisdiction over his person, and, in the court's opinion, there

was error in the judgment overruling the demurrer. Therefore the court reversed the judgment below and remanded the cause for a new trial.

On a third trial, 63 Tex. 271, Commissioner Watts held the facts to be that the plaintiffs below, Talbot & Cropper, brought suit on July 13, 1876, to recover certain moneys claimed to be due them as the assignees of a contract made and entered into between appellant and W. H. Woodhouse [Woodburn], concerning the transportation of the United States mail upon certain routes named. The cause was tried and appealed, and was by the Supreme Court reversed and remanded. After the reversal, appellees filed their first amended original petition, to wit, February 9, 1880, and on the same day took judgment by default. Upon appeal, it was held that the amendment set up a new cause of action, and that it was necessary to have service upon Bigham, and the cause was again reversed and remanded. On September 3, 1883, appellees filed their second original petition, reasserting the cause of action asserted in their original petition, with elaborate allegations as to their intention in filing the first amended petition. Appellant specially excepted to the amended petition, upon the ground that the cause of action therein asserted appeared from the allegations to be barred; this was overruled. The court held that if, as claimed by appellant, the second amended petition asserted a new cause of action, which would be subject to the operation of the statute of limitation, then the exception was certainly well taken, and the court erred in overruling the same; that the cause of action distinctly asserted by the first amended petition was for an amount of money claimed to be due appellees from appellant for carrying the United States mail on certain designated routes, by reason of a contract made and entered into by and between appellees and appellant on the 28th day of October, 1874; while that asserted by the second amended petition was for an amount of money claimed to be due them from appellant for carrying the United States mail upon the same routes, by reason of the contract made and entered into by and between appellant and Woodburn, and assigned by Woodburn to Overstreet and Talbot, and by Overstreet to Talbot & Cropper. This was also the same cause of action that was asserted by the original petition. The Supreme Court held that there were distinct causes of action alleged, and, if there had been any allegations in the first amended petition in any way retaining, even as part of the cause of action therein asserted, that which was asserted by the original petition, and afterwards reasserted by the second amended petition, that it would have been sufficient to prevent the running of the statute after the original petition was filed, but that such was not the case; that the Woodburn contract was entirely abandoned in the first amended petition as constituting the cause of action, except alone as an inducement for the $192 claimed by reason of the acceptance; that such contract was not declared on as constituting the cause of action asserted by the first amendment, so as to retain it before the court as such. The effect of the first amended petition upon that cause of action was the same as if a nonsuit had been entered. In other words, the statute commenced to run when the money became due, and continued to run until the filing of the second amended petition. From the allegations in this second amended petition, it affirmatively appears that about eight years had elapsed between the accrual of the cause of action and the filing of the amendment. Therefore the Supreme Court sustained the plea of limitation.

We do not think that the cause asserted in the instant case was upon two causes of action. All three suits, as stated in the original opinion, were brought by the corporation, but in the second amended petition the plaintiff alleged that the beginning of the negotiations between plaintiff and defendant were made at a time when a partnership existed, and that subsequently the two partners, together with their brother, organized and formed the corporation. We think that the two cases present a state of facts entirely different from the case cited.

Appellee also urges that we erred in overruling appellee's third assignment of error, and that we erred in holding that in a collateral attack there can be no challenge as to the illegality of the formation of a corporation on account of there being no statutory provision authorizing such a corporation to be formed. Appellee admits that, where there is a de facto or ostensible corporation, any irregularities in the incorporation thereof cannot be raised in a collateral proceeding, but that there is always a question of what constitutes a de facto corporation, and that this corporation was neither a corporation de jure or a corporation de facto. He cites 14 Corpus Juris, 214, where it is said the general rule is that there is a de facto corporation so that the legality of its corporate existence cannot be attacked collaterally where (1) there is a special act or general law under which a corporation may lawfully exist; (2) a bona fide attempt to organize; (3) actual user. Actual user means the actual enjoyment of a thing or the actual enjoyment of a privilege. 3 Bouvier's Law Dictionary, p. 3380. The quotation from Corpus Juris used, under subdivision 3, "actual user or exercise of corporate powers in pursuance of such law and attempted organization." Certainly there was an attempted user of the corporate powers in the instant case, and we hold that its corporate existence was not subject to collateral attack.

The case of Hunt v. Atkinson, 12 S.W.(2d)

142, 145, by the Commission of Appeals and approved by the Supreme Court, was a suit for mandamus by G. O. Hunt and others against Norman Atkinson, county judge of Harris county, and the city of Houston. The court said: "Having determined that article 1265 prescribes the only method whereby the city of Houston is authorized to extend its boundaries to include territory such as that in controversy, we come to consider whether or not the rule forbidding collateral attack upon existing corporations is applicable. The rule itself is well recognized and rests upon the soundest public policy. But an examination of the numerous cases supporting it will show that it applies only in those instances 'where the corporation attacked is at least a de facto corporation by virtue of an attempted organization under 'color of law.' A corporation, for the existence of which de jure there is no law, cannot be a de facto corporation, and its existence may be attacked directly or collaterally, or even ignored since it is in law nothing. It affords no rights and presents no defenses at any time, or as to any person. See Empire Mills v. Alston, etc., Co. (Tex. App.) 15 S. W. 200; Lum v. City of Bowie (Tex. Sup.) 18 S. W. 142; Parks v. West, 102 Tex. 11, 111 S. W. 726. Before an attempted organization can be said to be under 'color of law,' there must have been a good-faith attempt to organize in the method prescribed by existing law, and at least a colorable compliance with that law. McLeary v. Dawson, 87 Tex. 524, 29 S. W. 1044; Allen v. Long, 80 Tex. 266, 16 S. W. 43, 26 Am. St. Rep. 735; Finnegan v. Noerenberg, 52 Minn. 239, 53 N. W. 1150, 18 L. R. A. 778, 38 Am. St. Rep. 552; 14 C. J. 217, § 225. Where such attempt is made and the concern functions in the manner usual to such corporations, it becomes a corporation de facto, if not de jure, whatever the irregularities in the method of pursuing the statutory authority. This distinction abundantly appears from an examination of the authorities forbidding collateral attacks upon corporate existence, and to cite authorities would be to catalogue those numerous decisions."

The appellee did not quote all that was said and especially that part which stated: "Where such attempt is made and the concern functions in the manner usual to such corporations, it becomes a corporation de facto, if not de jure, whatever the irregularities in the method of pursuing the statutory authority."

We think that the opinion cited sufficiently answers the question raised by appellee on original hearing and in the motion for rehearing.

It is also urged that we erred in our original opinion in overruling appellee's second cross-assignment of error, and in holding that, where a brokerage contract for the sale of land is assigned or delegated or transferred to a corporation, the question cannot be raised in a collateral attack. We think we have sufficiently answered that objection in our original opinion.

The motion for rehearing is overruled.