GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. ROSA PERRY ET AL.

Decided January 25, 1905.

**1.—Juror—Failure to Summon—Challenge to Array—Talesman.**

A right to challenge the array of jurors did not arise on failure to secure attendance of those selected by the commissioners through default of the sheriff in attempting to notify them by mail, instead of personal service, where the selection, though late, did not make personal service impracticable and the vacancies were filled by talesmen summoned by order of the court.

**2.—Contributory Negligence—Question of Fact.**

Where the evidence of contributory negligence of the injured party was inconclusive, a verdict for plaintiff will not be set aside because of such negligence.

**3.—Negligence—Concurring Causes.**

Where a recovery was authorized by the charge only on a finding of negligence in failing to stop a hand car, on discovering an obstruction on the track, the question of whose negligence caused the obstruction becomes immaterial.

**4.—Fellow Servant—Injury to Vice-Principal.**

Under article 4560f, Revised Statutes, recovery may be had for injury to a section foreman by negligence of the hands under him in failing to stop a hand car in obedience to his orders.

**5.—Charge—Discovered Peril—Use of Means to Avoid.**

An instruction to find for plaintiff, in the absence of contributory negligence on the part of a section foreman killed by collision of his hand car with an obstruction on the track, if it was the duty of the hands on the car, on receiving his command to stop same, to have used the means at hand to stop, and they failed to use the means at hand consistent with the safety of said car and themselves before striking, and if they had done so the injury would have been avoided, was not subject to the objections that it required of defendant too high a degree of care; that it required defendant's servants to make use of all the means to stop regardless of their own safety; that it assumed that they failed to do so; that it left it to the jury to determine whether it was their duty to use all possible means, or that it permitted a finding for defendant only in case the injured foreman was negligent or had assumed the risk.

**6.—Limitation—New Cause of Action—Negligence.**

The original petition alleging negligence in permitting an obstruction on the track, causing the death of a section foreman whose hand car ran into it, an amendment alleging also negligence of the section hands in failing to obey the foreman's order to stop the car on discovering it did not introduce a new cause of action open to the plea of limitation.

**7.—Death—Damages—Charge.**

An instruction, on the measure of damages for injuries resulting in death, to award such sum as the jury believe, from the evidence, will compensate plaintiffs for the pecuniary loss, if any, which they have sustained by reason of the death of deceased, was not incorrect.

Vol. XXXVIII. Civil—6.

**8.—Negligence—Operation of Hand Car.**

Evidence considered and held to support a finding that the death of a sec-- tion foreman, killed by collision of his hand car with an obstruction on the track, was proximately caused by the negligence of those operating it in failing, on the obstruction being discovered, to use the means at hand for stopping the car. (Neill, J., dissenting.)

**9.—Death—Damages.**

A verdict, awarding as damages for the death of a section foreman fifty–four years of age, and earning $100 per month, $4,000 each to his two minor children, and $7,000 to his widow, sustained, as not excessive.

Appeal from the District Court of Bexar. Tried below before Hon. J. L. Camp.

*Newton & Ward* and *Baker, Botts, Parker & Garwood,* for appellant.— 1. The court erred in overruling defendant's motion to quash the venire in this case and to postpone this case for trial until defendant could have the benefit and privilege of trying the case before a jury regularly selected and drawn by the jury commissioners, and in forcing defendant to go to trial before a jury of talesmen. Chaps. 2, 3, 4, 5, 6, title 62, Rev. Stats., relating to Juries and Jury Commissioners; Rev. Stats., arts. 3174, 3175, 3176, 3177, 3178, 3179, 3180, 3181, 3182; Texas & N. O. Ry. v. Pullen, 75 S. W. Rep., 1085; White v. State, 9 Texas Ct. Rep., 675; State v. Austin, 82 S. W. Rep., 5; Thompson on Trials, sec. 33; State v. Newhouse, 29 La. Ann., 824; State v. Jenkins, 32 Kan., 477, 4 Pac. Rep., 809; United States v. Coit, Fed. Case No. 14829; State v. Eden, 133 Mo., 70, 34 S. W. Rep., 473.

2. The evidence of negligence was not sufficient to authorize a judg- ment against the defendant. Missouri Pac. Ry. v. Somers, 78 Texas, 441; National Bank v. National Bank, 96 Texas, 440; Choate v. Railway Co., 90 Texas, 88; Choate v. Railway Co., 91 Texas, 406; Burgess v. Western U. Tel. Co., 92 Texas, 128; League v. Trepanier, 36 S. W. Rep., 764; Gulf, C. & S. F. Ry. v. Wilson, 59 S. W. Rep., 591.

3. A superior servant can not recover for injuries caused by his negligence in respect to the speed and operation of the car under his control. Railway Co. v. Denny, 24 S. W. Rep., 320; Galveston, H. & S. A. Ry. Co. v. Sweeney, 36 S. W. Rep., 800; Gorham v. Railway Co. 20 S. W. Rep., 1060; Lane v. Railway Co., 29 N. W. Rep., 419; Railway Co. v. Snyder, 7 N. E. Rep., 604; Dewey v. Railway Co., 31 Iowa, 373; Louisville & N. Ry. v. Scanlon, 60 S. W. Rep., 646; Louisville & N. Ry. v. Moore, 83 Ky., 675; Brunswick & W. Ry. Co. v. Smith, 97 Ga., 777, 25 S. E. Rep., 759; sec. 344, 1 Labatt's Master and Servant.

4. The deceased, Joseph A. Perry, was the vice-principal of the section hands under him, and he and not defendant was responsible for the negligent conduct of the men working under his immediate super- vision and control. Railway v. Denny, 24 S. W. Rep., 320; Moore v. Jones, 39 S. W. Rep., 594; Galveston, H. & S. A. Ry. v. Adams, 94 Texas, 100; Gulf, C. & S. F. Ry. v. Howard, 80 S. W. Rep., 229.

5. The amount of the verdict was grossly and outrageously excessive, and was the result of sympathy for the plaintiffs, and of passion and prejudice or other improper motives as against defendant. San Antonio & A. P. Ry. v. Waller, 65 S. W. Rep., 212; Galveston, H. & S. A. Ry.

v. Johnson, 58 S. W. Rep., 625; Trinity Valley Ry. v. Stewart, 62 S. W. Rep., 1085; Railway Co. v. Miller, 57 S. W. Rep., 702.

6. The law only imposes the duty upon the master of exercising ordinary care in providing its servants a safe place to work and with safe appliances and tools, and only requires ordinary care to prevent injury to the servant in its employ. The charge of the court complained of required a higher degree of care upon the part of appellant's servants to have stopped the car upon the command of the deceased Perry than is imposed by law, in this, that by the charge the appellant was made responsible and the jury instructed to find a verdict for plaintiffs if Perry saw the board upon the rail and gave a command to stop the car in time to have stopped the same by the use of the means at hand before striking said board; and, further, it submitted to the jury that if they believed it was the duty of section men upon said handcar when said command to stop was given to have used the means at hand to stop said car and that said section men failed to use the means at hand consistent with the safety of said car and themselves to stop said car before striking said board and injuring Perry and that if they had used the means at hand consistent with the safety of said car and themselves the injury would have been avoided, and that such failure, if any, was negligence on their part, they would return a verdict in favor of plaintiffs. This charge required a higher degree of care upon the part of appellant's servants than is imposed upon it by law. Galveston, H. & S. A. Ry. v. Gormly, 91 Texas, 398; Houston, E. & W. T. Ry. v. Harnett, 48 S. W. Rep., 775; Gulf, W. T. & P. Co. v. Abbott, 24 S. W. Rep., 299; Garteiser v. Railway Co., 21 S. W. Rep., 631; City of Honey Grove v. Lamaster, 50 S. W. Rep., 1054; Railway Co. v. Smith, 87 Texas, 355.

7. The charge complained of was further erroneous in that the court commented upon the weight of the evidence and assumes, and repeats the assumption, that appellant's servants failed to use all the means at hand to stop the car. Railway Co. v. Williams, 40 S. W. Rep., 161; Dillingham v. Parker, 80 Texas, 572; Railway Co. v. Kutac, 76 Texas, 478; Railway Co. v. Christian, 69 Texas, 369; Brewing Co. v. Emerson, 36 S. W. Rep., 342.

8. The charge was further erroneous in that it permitted the jury to pass upon and consider as a proposition of law, that it was the duty of appellant's servants to have used all the means at hand to have stopped the car; that the court thus permits the jury to pass upon the law of the case instead of submitting to them proper issues of fact. Rev. Stats., arts. 1316, 1317.

9. The charge of the court on the measure of damages was erroneous and misleading to the jury in this: That it virtually gave the jury an unbridled license to find any amount that it saw fit in favor of plaintiffs, and gave them no legal guide by which to ascertain the damages sustained by the plaintiffs. Fort Worth & D. C. Ry. Co. v. Morrison, 93 Texas, 527; Traction Co. v. White, 94 Texas, 469; San Antonio & A. P. Ry. v. Waller, 65 S. W. Rep., 212; International Light and Power Co. v. Maxwell, 65 S. W. Rep., 81.

10. In the original petition the only ground of negligence alleged against defendant was the negligence in leaving the plank on defendant's

track over which the hand car on which the deceased Perry was riding ran, jolting him from the car and running over him and killing him. More than two years after the death of the deceased Perry the first amended original petition was filed in this case wherein for the first time it was alleged that it was not only negligence in defendant to have said plank on its rails, but that the deceased Perry discovered the board in time to have stopped the car if the section men had obeyed his orders to stop the car by the use of the means at hand. These allegations presented an entirely new and distinct cause of action from that presented in the original petition, and this cause of action as to the plaintiff, Rosa Perry, was barred by the two years statute of limitations. Art. 3354, Rev. Stats.; Lumber Co. v. Water Co., 94 Texas, 460; Williams v. Randen, 10 Texas, 4; Littlefield v. Fry, 39 Texas, 300; International & G. N. Ry. v. Pape, 73 Texas, 502; Railway Co. v. Scott, 75 Texas, 85; Connoly v. Hammond, 58 Texas, 21; Bigham v. Talbot, 51 Texas, 450; Bigham v. Talbot, 63 Texas, 271; In re Simms, 9 Fed. Rep., 441; Wyler v. Railway Co., 89 Fed. Rep., 41; Union Pac. Ry. v. Wyler, 158 U. S., 285; Box v. Railway Co., 78 N. W. Rep., 697; Chicago & A. Ry. Co. v. Scanlon, 48 N. E. Rep., 287; Railway Co. v. Smith, 81 Ala., 229; Rogers v. Ass'n., 17 S. C., 406; 1 Am. and Eng. Ency. of Pl. and Pr., p. 556.

*Perry J. Lewis* and *H. C. Carter*, for appellees.—1. Appellant's challenge to the array could not have been sustained, save by a plain violation of the statute. Rev. Stats., art. 3022; Smith v. Bates, 28 S. W. Rep., 64; Railway v. Vinson, 38 S. W. Rep., 504; Railway v. Fambrough, 55 S. W. Rep., 188; 12 Am. and Eng. Ency. Law, p. 343.

2. Appellant seems to intimate that because the deceased was foreman, the statute gives his family no protection in case he is injured by those who serve under him, and assisting in the operation of the car. Such a contention is directly in the face of the statute. Galloway v. Railway, 78 S. W. Rep., 32.

3. The verdict was not excessive in amount. Railway Co. v. Davis, 65 S. W. Rep., 217; Railway Co. v. McVea, 11 Texas Ct. Rep., 366; Railway Co. v. Lehmberg, 75 Texas, 67.

4. The court's charge did not hold appellant to a higher degree of care than the law requires. In the case of Railway v. Breadow, 90 Texas, 31, it is said: "If defendant, through the party in charge of the engine, knew of Breadow's peril in time to have avoided the same, such knowledge imposed upon it the new duty of using every means then within its power, consistent with the safety of the engine, to avoid running him down, and a failure so to do would render it liable, notwithstanding he may have been guilty of contributory negligence in being exposed to the peril." This rule was approved in Railway v. Staggs, 90 Texas, 460; Railway v. Shetter, 94 Texas, 199, and numerous other Texas cases which are cited in volume 4, Notes on Texas Rep., by Rose.

5. The amendment to plaintiffs' petition did not set up a new cause of action. Bigham v. Talbot, 63 Texas, 271; Railway v. Mitten, 36 S. W. Rep., 282; Railway v. Wellington, 36 S. W. Rep., 1114; Railway v. Frazier, 34 S. W. Rep., 664; Sherman Oil and Cotton Co. v.

Stewart, 42 S. W. Rep., 241; Railway v. Eckles, 60 S. W. Rep., 830; Railway v. Johnson, 34 S. W. Rep., 186; Cotter v. Parks, 80 Texas, 539. The following foreign cases clearly announce the law which has been so long established by the Texas decisions: Railway v. Bills (Ind.), 20 N. E. Rep., 775; Railway v. Woods (Ala.), 17 So. Rep., 41; Colley v. Gates (Ga.), 18 S. E. Rep., 817; Rolling Mill Co. v. Monka (Ill.), 107 Ill., 340; Zier v. Railway (Md.), 56 Atl. Rep., 385; Railway v. Pointer (Ky.), 69 S. W. Rep., 1108; Railway v. Bergschicker (Ind.), 69 N. E. Rep., 1000.

JAMES, CHIEF JUSTICE.—The verdict was in favor of appellees Rose Perry, the widow of Joseph A. Perry, for $7,000, and of his two children, Pearl and Florence for $4,000 each.

The ground upon which appellees sought in the amended petition to recover damages, and the sole ground for recovery submitted was negligence of the employes on a hand car in failing to do what should have been done to stop the hand car upon an order by the foreman to stop same. The injured party in this case was the foreman himself.

Evidence in the case shows that the hand car was returning late in the afternoon to Glidden Station, that it was down grade for over a mile to the station, that in descending this grade it was not necessary to work the handle bars of the car, that it was going as fast as it could go, which was estimated by the witnesses at about ten miles an hour, that the foreman was sitting in front and was about 75 or 80 feet from a board on the track ahead of the car, of a coal color—lying longitudinally with the rails, before he observed or could observe the same, that immediately upon observing same he gave a command in a loud voice to stop the car quickly, which it appears was heard by the employes and understood by them as an emergency stop. The car nevertheless was not checked in its speed, and came in contact with the plank with such force as to knock the foreman off and he died of his injuries the next day.

The testimony was such as would lead to divers conclusions of fact as to the negligence of the employes in reference to making proper exertions to stop the car. The evidence would probably have warranted the conclusion that the employes used all the care that, under the sudden circumstances, could have been expected of them, consistent with their own safety. On the other hand there was evidence which would lead to the conclusion that the brake was not set, or if set, then not set in such manner as to even check the car, also that the handle bars should have been used, but were not used at all, to aid in stopping the car, that if these means had been used which could have been used consistently with the safety of those on the car, the car would have been stopped before it reached the plank. In view of the verdict the latter conclusion becomes our conclusion of fact and the testimony bearing thereon will be exhibited more at length in another part of this opinion, the sufficiency of the testimony to support the verdict being the only question with which the members of the court have experienced any difficulty in arriving at a united decision.

The first assignment of error is that the court erred in overruling defendant's motion to quash the venire and to postpone the trial until de-

fendant could have the benefit and privilege of a jury regularly selected and drawn by the jury commissioners, and in forcing defendant to go to trial before a jury of talesmen

The facts upon this question are: "The jury commissioners appointed March 28, 1904, to select jurors for the April term, did not report until Saturday, March 31, 1904, the end of the term. The reason of the delay was that the jury commissioners in the Fifty-seventh District Court had the data necessary to assist these commissioners in forming the lists. The case had been set for trial on Monday, April 4, but was not reached on that day, and was called for trial on the 6th. On March 31, at half past two o'clock, the day the commissioners reported, the sheriff received a writ to summons the forty jurors to appear on April 4, and proceeded to summon them. On April 4, eighteen of these regular jurors appeared and the court excused five of them for valid reasons, leaving thirteen, whereupon the court directed the sheriff to summon eleven talesmen to constitute the twenty-four men-for the week. On the 6th when the case was reached the motion-under consideration was made. It appears that nine of the jurors on the list reported by the commissioners, lived in the country, the remainder in the city of San Antonio. The list having been reported on the 31st of March and the venire facias having issued same day about 2:30 p. m., service if made on the jurors during that day would have satisfied the statute as to three days' service on the jurors. The charge in appellant's brief, that when the court received the commissioners' report and delivered same to the clerk on March 31, it must have known that the statute could not be satisfied by three days' summons to the jurors, is unfounded. There is nothing to indicate an intentional or any other act of the judge, violative of the provisions of the statute.

The failure to summon the entire list of jurors and giving them the time prescribed, must be attributed to the act of the sheriff's office in summoning the country jurors. The deputy in charge of the writ testified that he did not have time to summon the eleven country jurors, having only Friday and Saturday and they were in different sections of the county. It is evident the deputy did not mean that from Thursday 2:30 p. m. to Saturday night, it was not possible for the sheriff's office to have reached these men in person or by deputy. He had reference to the custom of that office, which was pursued in this instance, of mailing postal cards to their several addresses. If it was meant that the sheriff's office could not possibly have summoned the jurors in a regular way, between 2:30 o'clock p. m. on Thursday and 12:00 o'clock that night, we think the trial court would have been justified in disregarding it. It might have been inconvenient by breaking in upon the custom of that office, and have necessitated an unusual effort to comply with the law in that time, but it certainly could have been done, and this without requiring anything very unreasonable, in view of the circumscribed limits of the county. Article 3181 provides "Such jurors shall be selected from the names included in the jury list for the week, if there be the requisite number of such in attendance who are not excused by the court." Article 3182 provides: "If the requisite number of such jurors be not in attendance at any time, the court shall direct

the sheriff to summon a sufficient number of qualified persons to make up the requisite number of jurors."

There being no dereliction of duty or intentional disregard of the statute on the part of the judge, whereby there was forced upon defendant a part only of the forty jurymen reported by the commissioners, we think it is clear that it was the judge's duty in such circumstances under the aforesaid articles to require a sufficient number of talesmen to make up the requisite number, to be summoned.

It was not the intention of the Legislature to have the business of the court suspended for the week, by reason of mere delinquencies of the summoning officers. Article 3203, Rev. Stats., provides that no challenge to the array shall be entertained where the jurors have been selected by jury commissioners. Article 3202, Revised Statutes, provides that any party, may before the jury is drawn, challenge the array of jurors upon making it appear that the officer summoning the jury had acted corruptly and had willfully summoned jurors known to be prejudiced against the party challenging, or biased in favor of the adverse party.

On the 6th of April the defendant was confronted with a sufficient number of jurors, made up of the thirteen men that were on the list reported by the commissioners, and the rest talesmen who were summoned as the court had ordered done on the 4th. So far as the thirteen men were concerned the statute prohibited any challenge to the array and as to the remainder, the motion did not allege corruption or such other conduct on the part of the officer as the statute required to make the challenge valid. We are, therefore, of opinion that the assignment can not be sustained.

Under the third assignment we have the proposition that a superior servant can not recover for injuries caused by his negligence in respect to the speed and operation of the car under his control. The assignment is that the verdict was contrary to the law and the evidence, and the motion for new trial should have been granted, in view of said proposition, it being the only proposition advanced under it. The negligence of Perry in this or any other respect was not conclusively established by the evidence, if at all.

The fourth assignment is also overruled. It seems to us to be a matter of no consequence how the plank came to be upon the track. It was there, and according to the testimony its presence was not known to those on the hand car, until seen by Perry. The negligence of defendant with regard to the plank being there as a ground of recovery, was eliminated in the submission of the case. The negligence of the men on the car with respect to stopping it on the order of Perry, if any, could unquestionably be taken as the proximate and direct cause of his injury.

The fifth is that the court erred in overruling the motion for new trial, because the verdict is contrary to the evidence in this: That the deceased was the vice-principal of the section hands under him and he and not defendant was responsible for the negligent conduct of the men working under his immediate supervision and control. The operation of the hand car was the operation of a railroad in the sense of article 4560f, Revised Statutes, the terms of which are decisive against the proposition as between defendant and deceased. Gulf, C. & S. F.

Ry. Co. v. Howard, 80 S. W. Rep., 229; Galloway v. Railway Co., 78 S. W. Rep., 32.

The ninth assignment of error complains of this part of the charge: "If you believe from the evidence that on or about the 1st day of May, 1900, Joseph A. Perry was in the employ of the defendant in the capacity of a section foreman, and that on said date he was upon a hand car with a number of section men in defendant's employ returning to the station of Glidden, and that when said hand car reached a point about a mile from the station of Glidden, it ran upon and over a piece of board which was lying upon one of the rails, and as a result thereof, said Joseph A. Perry was thrown from the said hand car, and that the said hand car ran over him and so injured him as to cause his death upon the following day, and if you further believe from the evidence that the said Joseph A. Perry saw the said board upon the rail and gave a command to stop the said car in time to have stopped the car by use of the means at hand before striking said board and injury to said Joseph A. Perry; and if you further believe from the evidence that it was the duty of the section men upon the said hand car, when the said command, if any, to stop the car was given, to have used the means at hand to stop said car, and that said section men failed to use the means at hand consistent with the safety of said car and themselves to stop said car, before striking said board and injury to said Joseph A. Perry, and that if they had used the means at hand consistent with the safety of said car and themselves, said injury to said Joseph A. Perry would have been avoided, and that such failure, if any, was negligence on their part, and that such negligence, if any, was the direct cause of the injury and death of the said Joseph A. Perry, and that the said Joseph A. Perry was not guilty of contributory negligence and did not assume the risk; and if you further believe that the plaintiffs are the wife and children, respectively, of the said Joseph A. Perry, and that they were damaged by his death, then I charge you that your verdict must be for the plaintiffs."

The complaints in reference to this charge are:

1.   It required a higher degree of care of appellant than was imposed by law.

2.   It was susceptible of being construed by the jury as authorizing them to find against defendant upon the theory that its servants were required to make use of all the means at hand to stop the car, regardless of their own safety or the safety of the car.

3.   It commented upon the weight of the evidence, and assumes and repeats the assumption that appellant's servants failed to use all the means at hand to stop the car.

4.   It permitted the jury to pass upon as a proposition of law whether or not it was the duty of appellant's servants to use all the means at hand to stop the car.

5.   It was misleading in that it only permitted the jury to find for defendant, if they believed that deceased was guilty of contributory negligence or assumed the risk, and that before appellant would be entitled to a verdict upon the other issues submitted by the charge, the jury must have found that appellant's servants used all the means at hand to stop the car.

It can not be denied that it was the duty of the men, when the order to stop was given by the foreman, to use all the means they had at hand for that purpose that was required by the demands of what would have been ordinary care under the circumstances, consistent with their own safety and that of the car.   This is in substance what the jury were told by this instruction.

It did not tell the jury that all the means at hand had to be used, otherwise it would be negligence.   It told them that in order to find against defendant, they must find first that the car could have been stopped by the use of the means at hand in time to have avoided the injury.   Next they had to pass on the question and find from the evidence that it was the duty of the men when said command was given, to use the means at hand to stop the car, and that they failed to do this (not wholly), but insofar as they could have done so consistently with their own safety and that of the car; and next that if they had done this the injury to Perry would not have occurred, and next that such failure was negligence on their part which was the proximate cause of the injury and death of Perry—and further that Perry was not guilty of contributory negligence, etc.

We are unable to agree with any of the aforesaid propositions.   That the charge did not impose a higher degree of care on defendant than the law imposes seems to us clear.   No jury of common descrimination would read the charge and understand that they were told that the men must have used all the means at hand without reference to their safety and that of the car, or the question of negligence.   Neither does the charge assume that the men failed to use all the means at hand, nor did it require that all the means at hand should have been used.   The charge amply qualifies the use of the means at hand, by impressing upon the jury that only such use was necessary as was consistent with the safety of the men and car, and also to the extent that was necessary to meet the demands of ordinary care on the part of the men.

There is a sixth proposition under said ninth assignment to the effect that the charge was erroneous in submitting to the jury the question that if they believed it was the duty of the men when the command was given, to have used the means at hand to stop the car, and to find that the failure to use all the means at hands to do so, was negligence; and by instructing the jury that negligence as used in the charge meant the failure to use ordinary care, it in effect told the jury that ordinary care, under the facts of this case, required appellant's servants to use all the means at hand to stop the car when ordered to do so, thus requiring of appellant's servants the highest care usually exercised by persons of the very highest caution and prudence.

The above proposition is so at variance with what the charge says, that it seems to us to require no discussion.

The eleventh is that the court erred in refusing to instruct the jury that plaintiff Mrs. Rosa Perry, was barred by limitation and to return a verdict in favor of defendant as to her.

The original petition filed May 1, 1900, alleged that the accident to the car resulting in Perry's death was caused by defendant's negligence in the piece of board being upon the track.   On September 3, 1903, plaintiff filed the amended petition upon which the cause was tried,

alleging the same accident as resulting from the same act of negligence, and also from the negligence of the men on the car in failing to observe the order to stop.   There was a plea of the two years statute of limitations as to what appellant in its brief calls "this new cause of action." It was the only form of negligence submitted.  If this presented a new cause of action, that is, not the one originally sued on, the charge ought to have been given.

We have already had occasion to hold that merely amending the pleading with respect to the allegations of negligence, does not introduce a new or different cause of action.   The purpose of the original petition was to recover of defendant damages sustained by plaintiffs from the death of Perry in the particular accident, through the negligence of the defendant, alleging the negligence to be in a particular respect.  It would be immaterial in any case what form the negligence took, so long as it was negligence of defendant causing the injury complained of.   Hence it can not be said that any particular form of negligence is an essential element of the cause of action, nor that a change of allegations as to negligence really affects the cause of action.  See Mexican C. Ry. Co. v. Mitten, 13 Texas Civ. App., 653, 36 S. W. Rep., 282; Southern P. Ry. Co. v. Wellington, 36 S. W. Rep., 1114; Sherman Oil & Cotton Co. v. Stewart, 17 Texas Civ. App., 59, 42 S. W. Rep., 240.

The charge on the measure of damages complained of by the tenth assignment was: "If you find for the plaintiffs and allow them damages, you should award them such damages as you believe from the evidence will compensate them for the pecuniary loss, if any, which you believe from the evidence they have sustained by reason of the death of Joseph A. Perry."  This charge was not an incorrect statement of the law.

The second assignment is that the verdict was contrary to the law and without any support in the evidence, in that the undisputed evidence shows that the plank was not discovered until within two and one-half rail lengths or sixty to seventy-five feet of the car, and that owing to the speed at which the car was going down a very steep grade, it was impossible for the section men, after the plank was discovered, to have stopped it before it ran upon the plank; that said men by reason of the fact that the car was so near the plank when discovered, were impelled by a sense of self-preservation to look out for their own safety by getting a firmer grasp upon the car, and all did so, except the man whose duty it was to apply the brakes, and that just as soon as the order was given to stop, this man applied the brakes and did all in his power to stop the car, but the close proximity to the plank and the speed at which the car had been negligently permitted to run by the section foreman, made it impossible for said section hands to stop the car before reaching the obstruction.

The sixth assignment alleges that the verdict is contrary to the overwhelming weight and preponderance of the evidence.

The undisputed testimony was not as appellant claims, nor can we say that the great preponderance of the evidence is against the finding.   We will here state from the record.

The testimony of Simon Walker, one of the pumpers on the car, was before the jury in the form of a deposition and also as a witness on the stand.   In his deposition he stated: "Mr. Perry hallooed to stop the

car when we were three rail lengths or maybe more from the board. We saw it as soon as we could on account of the way it was lying and it was a cloudy evening." (Other witnesses stated the board was of dark color.) "A rail length is about 30 feet." "Mr. Perry gave the order very loud to stop the car, to stop it quick and I think the brakeman put on the brakes. Yes, means could have been used to stop the car that were not used. Hand cars can be controlled a great deal with the handle bars. They have lots of power to stop the car when they are used that way. Whenever it is necessary to stop a car quick, it is customary on defendant's road for the men to use the handle bars to help make the stop. The section men who were on the car at the time that Mr. Perry was hurt, had experience in operating a hand car. We all had experience in working at the handle bars and brakes. . . . I don't know why the handle bars were not used to help stop the car. I suppose the men just got rattled and forgot it. From the way Mr. Perry gave the order it called for a quick stop. At the time he gave the order, if the brakes and handle bars had both been used the car could have been stopped in a rail's length or anyhow in a rail and a half. If the brake had been put on good and hard at the time Mr. Perry gave the order to stop the car, it could have been stopped in two rails, or not more than two rails and a half. When the cars are running the handle bars go up and down, and if you hold these handle bars firm it is a big brake against the wheels."

On personal examination the witness testified: "The reason I didn't take hold of the handle bars was no more than any of the rest, I had no more reason, the word was given so quick that I was a little kinder frightened, so bad that I couldn't have taken hold of the handle bars any quicker than any of the others. I can't tell you the reason why we all didn't take hold of it, I suppose we all could look up, but it struck so quick I didn't think of the handlebars. . . . I am not able to explain how long it was before the car got to the plank after Mr. Perry gave the order, it was so quick you couldn't tell how long. Just like lightning, I couldn't tell exactly. . . . We could have stopped the car in two rail lengths and a half. No, sir, we could not have stopped it, but the force of the men ahold of the handle bars and the brake they would have held it a little more than it was." "Yes, sir, I testified how the handle bars were used to stop the car, that they were held just rigid and that brakes the car, it helps to hold the car, hold the force gradually, it don't lock them, but helps to hold it. We were coming down the grade and the car ran without working the bars, didn't put any strength on them, just with our hands on the bars."

Albert Glenn, one of the men on the car, stated that when a car is running fast and there is something on the track, you have to act pretty fast in order to stop it, and by using all the means you have putting on the brake quick and doing all you can with the handle bars, you can do a great deal to stop the car. We didn't do any of that: I don't know whether the brakeman put on the brakes or not. When the brakes are put on in an emergency stop, you can feel it. I didn't feel the brakes at all. . . . We didn't stop that car before running over the board, because it was done too quick."

Lee Shepard, another of the men, testified: "I caught hold of the

handle bars to hold myself on. As soon as I saw the brake was on I grabbed the handle bars to steady myself, and held them tight enough to hold myself on and all the other boys did the same way, to keep from falling. We didn't pull down and help stop the car because it was supposed to be stopped by the brakes."

Richard Courtney, a section hand who was sitting beside Perry in front of the car, stated that the car didn't seem to stop, and he didn't feel the brake . . . that he guessed the car was going about the same speed as when Mr. Perry hallooed when it struck the board. It is a fact that when it struck the board and knocked him and ran over the board and over his body, it ran as much as two rail lengths beyond him, every bit of it—might have been more.

J. A. Schackel, who had been section foreman of defendant, 'also roadmaster, who testified that he was familiar with the handling of hand cars, and familiar with the grade and track in question stated: "A hand car going over that hill and running free can be stopped without the handle bars being used, but it would take too long. Q. Say a hand car is going down there and an emergency stop is called for, in what distance could it be stopped and how should it be stopped, what procedure on defendant's line?" A. "If they handle the brake properly and handle the lever holds, that car can be stopped inside of thirty or forty feet." Being asked how these handle bars are used to stop a car he stated: "Why a handle on each side, one in front and one on the hind end for pumping purposes, and the brake is in behind and the middle man, hind man, puts the brake on and the other five, if they want to help hold, can stop inside of thirty or forty feet. You bear down when the lever comes up and pull up when it goes down. The effect on the wheels is that it slides them, it locks the wheels. And it can be stopped in going at that rate in from thirty to forty feet. The handle bars are used for the purpose of pumping and stopping the same way. That is the rule. . . . Yes, sir, I am acquainted with the hill there, it is a very steep grade. If the car is turned loose on top of that grade and seven or eight men on it and all their tools, it is capable of going eight or ten miles an hour, that is as fast as it can go. Yes, sir, I said that if the men will take hold of the handle bars and the brakes they can stop it in from thirty to forty feet." On cross examination this witness was asked: "Suppose the section foreman is sitting down on the front part of the car and one of the other men is sitting on the front part of the car and the others are standing there and haven't got hold of the handle bars, and the foreman has got to give an order to these people to stop the car, and they have to gather themselves together and then catch hold of the handle bars and the brakes, do you think that could be done, the car stopped in thirty or forty feet?" A. "Yes, sir. . . . The car could be stopped in thirty or forty feet with the foreman sitting down and one of the men sitting down in front and the other men standing up in the car paying no attention, could get hold of the handle bars, and from the time the order was given to stop under those circumstances it could be stopped in thirty or forty feet—they can do it every time." "Yes, they can do it down that steep grade." "I have handled handle bars every day for the last 17 years and have ridden on them every day.

When the boss gives a signal for the car to stop it is the duty of the brakeman and men altogether to stop the car. . . . They expect the boss's signals to come at any time, they are supposed to be ready to stop it quick."

The testimony was that the car stopped after it struck the plank at a distance of two rail lengths, or more from that point; and there was abundant testimony going to show that the car did not check its speed any before striking the board.

The witness Coffin testified: "I asked him (Perry) how it happened, and he said there was a block in the way on the track and they didn't stop the car and the car ran over it and he fell off. This is the way I remember it, He said he told them to stop the car and they didn't do it. That is about all he said. He was in such a weak state he didn't talk much." Mrs. Perry testified the same.

In view of this testimony it was not an unsupported conclusion that the car could and ought to have been stopped before it struck the board. We can not say that it was not fairly and even not amply warranted. Take the testimony of Simon Walker (and it was for the jury to judge of the credibility and weight of his testimony, taking both his deposition and his oral testimony), and that of Schackel, alone or in connection with the declaration of deceased as to how the accident occurred, and we have a case presented for a jury, showing that proper diligence on the part of the men would have stopped the car in thirty or forty feet, or some distance before it could have reached the plank.

If we should eliminate the use of the handle bars as a factor in stopping the car, there is the testimony of Walker, that if the brakes had been put on good and hard at the time the order was given it would have stopped the car in two rails length, or not more than two rails and a half, which was about the distance the car was from the plank when the order was given. This statement we can not be surprised at the jury crediting and giving effect to, when there was ample testimony going to show that the speed was not abated any until after the accident, and that it was then stopped by the brake alone in about that distance.

We think it unnecessary to sustain the verdict, to discuss the testimony further at any length. There was much testimony showing that the men who should have used the handle bars in stopping the car were prevented from doing so by apprehensions and efforts for their own safety. This was a matter for the jury to consider in declaring their omission culpable negligence or excusable negligence. However, we think the jury could have found that the handle bars could not be used with any effect to stop or check this car, and also that under the circumstances it was not negligence to fail to use them, and we may assume that they so found, still the evidence shows clearly and it is not contended to the contrary that the brakeman was not panic stricken, and was in position to put on the brakes immediately, and there certainly was testimony which authorized the jury to find that he omitted to do this altogether, or so as to have effect on the speed of the car, until it had struck the plank.

The seventh assignment complains of the verdict being excessive. We must overrule this assignment also. Perry was, according to evidence in

the case, the means of earning at the time of his death $100 per month. $65 he was getting for his services as foreman; $35 he received from the commissary which was conducted by himself and his wife. All this was swept away by his death. He was kind and affectionate to his family, a good provider and spent what he earned on his family; was a very industrious man and worked all the time. The two children were girls of tender age. There was evidence that he indulged in drink, but evidence that he did not drink to excess, and not so as to interfere with his work and usefulness. He was fifty-four years of age.

We have not the slightest hesitation in saying that $4,000 each for the children was not an unreasonable verdict. And we feel unable to condemn the verdict for $7,000 in favor of the wife. A man of fifty-four years, in good health has a considerable expectancy. This matter was peculiarly the function of the jury to determine, and we would have to arbitrarily substitute our judgment for that of the jury, to hold that he would not have lived long enough in usefulness, to warrant the award.

We overrule the eighth assignment because the circumstances of the case would not justify holding that as a matter of law, Perry was killed by reason of the ordinary risks attending his employment or that he assumed the risk of the unforeseen danger. Affirmed.

<em>Affirmed.</em>

I concur in the foregoing opinion. W. S. Fly, Associate Justice.

DISSENTING OPINION.

NEILL, ASSOCIATE JUSTICE.—I differ from the majority of the court in their conclusions of fact, and will in a few words state the reason why I can not agree with them.

The burden of proving every essential fact necessary to make out her case was throughout the trial upon the plaintiff. Among the essential facts she was burdened with proving was that the negligence of the defendant was the proximate cause of her husband's death. If she failed to establish the affirmative of this issue, she failed in her case. In proving this essential fact she was required to bring her proof to the required height and carry her case beyond an equilibrium of proof. In other words, it was for her to show that the evidence on the affirmative of this issue established it as a fact; for unless it was shown to be a fact that deceased's death was *proximately caused* by defendant's negligence, or negligence attributable to it, her whole case fell to the ground. It was as essential for her to prove this fact as it was for her to prove that deceased was her husband.

In determining whether she has discharged this burden, I am willing to concede for the purposes of this case that defendants' servants operating the handcar failed to use the means at hand to stop it (though it seems to me the evidence preponderates the other way) and that such failure was negligence attributable to defendant. But I do not and can not believe from the evidence that if all the means at hand had been used the car would have been stopped in time to have averted the accident. If it could not have been, then the negligence of the man in fail-

ing to use the means at hand to stop it was not the *proximate* cause of Perry's death, but it ensued from an unavoidable accident.

Upon this issue plaintiff rested her case on the testimony, recited in the majority opinion, of Simon Walker. This witness was present and testified at the trial that the car could not have been stopped after the order was given before reaching the board on the track which caused Perry to be thrown from the car. If the testimony had closed here, could it be said from it that the fact of deceased's death was proximately caused by the failure of the men on the car to use the means at hand to stop it after the order was given? I do not think so. For it can't be told whether the testimony of the witness taken by depositions or that given orally upon the trial is correct. His testimony upon the issue given on the different occasions is in direct conflict and I don't think tends in the least to prove or disprove the essential fact at issue.

The six other men who were on the hand car when the accident happened, testified that the car could not have been stopped, after the order was given by Perry, by the use of the means at hand in time to have averted the accident. Each of them testified with the utmost minutia as to all the facts and circumstances incident to and attending the accident; and the testimony of every one of them is perfectly consistent with the fact that it was impossible to stop the car after the order was given before it reached the board. This, in my opinion, is absolutely inconsistent with the theory that it could have been stopped by the use of all the means at hand in time. To support the affirmative of this issue, there is only the opinion of an expert, J. A. Schackel, who was not on the ground and knew nothing of the facts and circumstances, which is taken by the majority of the court as outweighing the opinions of the six witnesses to the accident whose opinions are corroborated by all the facts and circumstances attending the catastrophe, and who were experts themselves in operating hand cars.

I say that plaintiff has only the opinion of Schackel, for I don't think the declarations of the deceased as testified to by Coffin are of any probative force whatever upon this issue. These declarations were not *res gestae,* for they were, if as narrated by the witness, made late at night, after deceased had been carried to the section-house long after and away from the place where the accident occurred. In the statement of deceased he does not say, or undertake to say, nor can it be inferred from what he did say, that the car could have been stopped after he gave the order in time to have averted the accident. Besides it may be doubted whether the statement made by deceased was as detailed by Coffin, in view of the fact that two other witnesses who heard the conversation (McNeil and Turner) testified that Mr. Perry, upon being asked how the accident occurred, stated, in substance, that he was in the front end of the car coming down hill fast and there was a piece of plank or something on the track and he tried to kick it off and his foot got hung and jerked him off or he stumbled and fell off.

It may be that I have, in conceding that the men on the car were negligent in failing to use every means to stop it after Perry gave the order, conceded more than I ought. For it can hardly be deemed negligence to fail to use any or every means to do that which the facts show it is impossible to do.

Having concluded, from reading and carefully considering every word of the testimony found in the record, that the evidence is wholly insufficient to show, even if negligence of the defendant is conceded, that such negligence was the proximate cause of Perry's death, I deemed it my duty to state such conclusion and my reasons for it. I have the highest regard for the opinion of my associates, and they may be right in their conclusions and I may be wrong, but I don't think so.

As the law is not "a beautiful and ineffectual angel, beating in the void his luminous wings in vain," but is a creature of man dwelling on the earth with men, touching them at every point in all their relations and affairs of life, deciding and dispensing justice upon evidence, never giving judgment without proof of essential facts, I can not, in the absence of evidence sufficient to establish such a fact, give my consent to the affirmance of the judgment.

Writ of error refused.