## CITY OF WICHITA FALLS v. LIPSCOMB.
### No. 12663.

Court of Civil Appeals of Texas. Fort Worth.
April 30, 1932.

Rehearing Denied June 4, 1932.

Thelbert Martin, of Wichita Falls, for appellant.

Hoffman & Nelson, of Wichita Falls, for appellee.

DUNKLIN, J.

This suit was instituted by Louise Lipscomb against the city of Wichita Falls to recover damages for personal injuries sustained to her leg and ankle. According to allegations in the petition, her injuries occurred in the following manner: She parked her car near the William & Mary Hotel, situated on the corner of Tenth and Travis streets in the city of Wichita Falls, while she visited a friend in the hotel, and upon returning to her car after making the visit, and while crossing a narrow strip between the sidewalk and the curb, she stepped on the lid or covering of what is known as a meter box in which a water meter was housed. The weight of her body upon the lid caused it to turn, resulting in her leg and foot slipping down into the meter box, and her knee and ankle were bruised by striking the edge of the lid of the box. The meter box was two and one-half feet deep, made of cement, and covered with a cast-iron lid, and was owned and maintained by the city of Wichita Falls as a part of its water system, and the meter was designed to measure the amount of water used by the occupants of the adjoining property. The lid or covering of the meter box was flush with the level of the ground surrounding it. Her claim for damages was based upon allegations of negligence on the part of defendant in failing to keep the top or lid of the meter box locked so that it would not be misplaced or pushed loose by persons stepping thereon and falling into the opening; and that it had notice of the danger of such an accident to any one who might be passing over the place where the meter box was located, under like circumstances.

The case was tried before a jury on special issues, which, together with the findings of the jury thereon, are as follows:

"1. Do you find from a preponderance of the evidence that the water meter box in question was owned by the City of Wichita Falls on January 29, 1930? Answer: Yes.

"2. Do you find from a preponderance of the evidence that the meter box in question was maintained by the City of Wichita Falls on January 29, 1930? Answer: Yes.

"3. Do you find from a preponderance of the evidence that the City of Wichita Falls maintained the meter box in question in connection with its water distribution system? Answer: Yes.

"4. Do you find from a preponderance of the evidence that the meter box in question was unlocked at the time of the alleged accident to the plaintiff? Answer: Yes.

"5. Do you find from a preponderance of the evidence that the defendant failed to keep the meter box locked on the occasion in question? Answer: Yes.

"6. Do you find from a preponderance of the evidence that the failure of the defendant to keep the meter box locked, if it did fail to keep it locked, was negligence, as that term is hereinafter defined? Answer: Yes.

"7. Do you find from a preponderance of

the evidence that the failure of the defendant to keep the meter box locked, if you have so found, was the proximate cause, as that term has been hereinbefore defined, of the injury to plaintiff, if any? Answer: Yes.

"8. Find from a preponderance of the evidence what amount of money, if now paid in cash, would fairly and reasonably compensate plaintiff for her injuries, if any. Answer: One Thousand Dollars.

"(Submitted at the defendant's request):

"1. If you find in answer to special issues Nos. 1, 2 and 3, that the water meter box in question was owned and maintained by the City of Wichita Falls, then find if the defendant exercised reasonable care in locating such box in the place where it was located. Answer: Yes.

"2. If you find in answer to special issues Nos. 1, 2 and 3 that the water meter box in question was owned and maintained on January 29, 1930, by the City of Wichita Falls, then find if defendant exercised reasonable care in the maintenance of said water meter box on said January 29, 1930. Answer: No.

"3. Find whether or not the plaintiff used that degree of care commensurate with the danger involved in walking over that part of the street where said water meter box was located and situated. Answer: Yes.

"5. Was the meter box in question reasonably safe, considering its location, with its lid lying flat and unlocked? Answer: No.

"6. Was the plaintiff guilty of contributory negligence, as that term has been defined in this charge, by leaving the sidewalk and going upon the space outside the sidewalk on said January 29, 1930? Answer: No.

"7. Was the plaintiff guilty of contributory negligence, as that term has been defined, by stepping on the top of the water meter box on said Jan. 29, 1930? Answer: No.

"8. Did the defendant know, or could it have known by the use of reasonable care, that the meter box in question was unlocked, if you find same was unlocked on January 29, 1930? Answer: Yes.

"9. Did the defendant know, or could it have known by the use of reasonable care, that the plaintiff was going to step on the water meter box in question on Jan. 29, 1930? Answer: No.

"10. Was the space over which the plaintiff was walking and in which the meter box in question was located, intended for use by pedestrians? Answer: Yes.

"11. If you have answered issue No. 4 of the court's main charge 'yes', then do you find that the defendant had notice that said meter box was unlocked? Answer: No.

"12. Do you find from the evidence that the plaintiff was negligent, as that term has been defined, in going off the paved portion of the sidewalk and street? Answer: No.

"14. Do you find from the evidence that the plaintiff was guilty of negligence, as that term has been defined, in stepping on the meter box in question? Answer: No."

■ Error has been assigned to the action of the court in overruling the defendant's motion for continuance after plaintiff had filed an amended petition on the eve of the trial of the case, which, it is insisted, set up a new cause of action on which the defendant had not prepared for trial. In the original petition the meter box was alleged to be located in front of the William & Mary Hotel between the sidewalk and curb, while in the amended petition, upon which plaintiff went to trial, the location of the box was alleged to be about 6 or 8 feet west of the front of the William & Mary Hotel, between the sidewalk and the curb, which space was used by the general public and particularly by people who were guests of the hotel and by visitors in going to and returning from cars parked at the curb and in front of the hotel building. It was further alleged in the motion for continuance, and the contention is made here, that the case should have been continued for the sole reason that the amended petition did set up a new cause of action. We believe it clear that that contention is unsound, since the location of the meter box was merely for the purpose of identification. The gist of the cause of action was negligence in failing to have the lid of the box locked, situated as it was between the curb and the sidewalk where visitors to the hotel were accustomed to walk. The authorities cited by appellant to support this assignment, such as C., R. I. & G. Ry. Co. v. Groner, 100 Tex. 414, 100 S. W. 137, and decisions cited in that case, are not applicable here by reason of the different facts and issues involved. And while the motion contained the further allegation that the defendant "had not had time in which to prepare its defense to this new cause of action, and had no intimation from the plaintiff as to facts of the new cause of action," yet the motion was not verified and was not in compliance with the requirements of articles 2167 and 2168, Rev. Civ. Statutes, and therefore the second ground of the motion just quoted can form no basis for complaint; nor has it been stressed here independently of the allegation that a new cause of action had been set up by the amended pleading. See 1 Texas Jurisprudence, p. 621 et seq.; Austin & N. W. Ry. Co. v. Flannagan (Tex. Civ. App.) 40 S. W. 1043; G., H. & S. A. Ry. Co. v. Perry, 38 Tex. Civ. App. 81, 85 S. W. 62; Mexican Cent. Ry. Co. v. Mitten, 13 Tex. Civ. App. 653, 36 S. W. 282; G., H. & S. A. Ry. Co. v. Brewer (Tex. Civ. App.) 4 S.W.(2d) 320.

Plaintiff testified, in substance, that she went to the William & Mary Hotel to visit a friend, Miss Fannie Vance; that she did not have room to park her car immediately in

front of the hotel, but parked it at the nearest open space against the curb of the street, and after her visit returned to go to her car, and, while walking along the space between the curb and the sidewalk, she stepped on the lid or covering of the meter box and when she did so the lid turned and her foot dropped into the meter box and her knee and ankle were severely bruised by coming in contact with the lid which had turned; that the lid of the box was not locked or fastened, by reason of which it turned when she stepped on it. According to her further testimony the space where the meter box was located was open to travel by pedestrians, and there was nothing to indicate to her any danger in stepping on the lid, and the same looked to be level with the ground surrounding it. The accident happened about 5 o'clock in the afternoon and at a time when she could clearly observe her surroundings; and the place where the meter box was located was commonly used by persons visiting the hotel after parking their cars against 'the curb, although it was not opposite the main entrance to the hotel.

Miss Vance testified that after plaintiff had fallen into the meter box she went to her assistance after being called by her, and after plaintiff had extricated herself from the box and was standing by the side of it. She further testified that she saw the meter box into which plaintiff had fallen, and that the lid or top was then off and had turned over; that by reason of the injuries plaintiff was unable to walk without assistance and was complaining of pain, and that witness assisted plaintiff to her car, fifteen or twenty steps away, and drove her to her home, and witness saw the injuries to plaintiff's ankle and knee; that the meter box was some 8 or 10 feet from the sidewalk which runs in front of the hotel and about halfway between the curb and sidewalk; that there was one and possibly two other meter boxes between the sidewalk and curb in front of the hotel.

The witness Robbins testified without contradiction that he was familiar with water meters and boxes of the water system of Wichita Falls and had occasion to examine this particular one in controversy which he says was of the same type of those generally maintained by the city. He further testified that those boxes "are constructed of cement; they have two or two and one-half feet of box under the ground and cover it over with a ring and lid made of cast iron. The ring is fastened onto the cement, stationary, and is grooved—the lid that goes over that is flanged to set down in the groove, and be flush after it is locked. The lid has a little knot that connects underneath with the ring—that makes it stationary on two sides.

"Q. Now, was the lid that you examined of that type? Answer: Yes it was that type.

"Q. Now, when those things are locked, I will ask you if it is possible for them to come loose when you step on it? A. I never did see one come loose without breaking it."

The city of Wichita Falls was operating under a charter adopted in accordance with the provisions of what are termed the Home Rule Statutes embodied in chapter 13, title 28, Rev. Civ. Statutes of 1925, beginning with article 1165, enacted under authority of section 5, art. 11, of the Constitution, known as the Home Rule Amendment. Article 1175 of that chapter of the statute reads in part as follows:

"Cities adopting the charter or amendment hereunder shall have full power of local self-government, and among the other powers that may be exercised by any such city the following are hereby enumerated for greater certainty: * * *

"6. To provide for the exemption from liability on account of any claim for any damages to any person or property, or to fix such rules and regulations governing the city's liability as may be deemed advisable. * * *

"11. To have the exclusive right to own, erect, maintain and operate water works and water works system for the use of any city, and its inhabitants, to regulate the same and have power to prescribe rates for water furnished and to acquire by purchase, donation or otherwise, suitable grounds within and without the limits of the city on which to erect any such works and the necessary right of way, and to do and perform whatsoever may be necessary to operate and maintain the said water works or water works system and to compel the owners of all property and the agents of such owners or persons in control thereof to pay all charges for water furnished upon such property and to fix a lien upon such property for any such charges."

Error has been assigned to the action of the court in sustaining plaintiff's exception to that portion of defendant's answer invoking subdivision 6 of article 1175 and section 139 of its charter as a bar to plaintiff's suit. That section of its charter copied in the answer is as follows: "No suit or action shall ever be maintained in any of the courts of this state or the United States against the City of Wichita Falls to recover damages for or on account of personal injuries sustained or suffered by any person or persons whomsoever, and said City shall be exempt from liability on account of all such damages to any person by reason of personal injuries sustained by him or any other person."

One of the grounds of that exception was that the exemption pleaded was in violation of article 1, § 13, of our State Constitution, which provides that: "All courts shall be

open; and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

■ Many decisions of our Supreme Court might be cited holding that a municipal corporation is liable at common law for negligence in the performance of private corporate acts as distinguished from those of a governmental nature only; the leading case being City of Galveston v. Posnaisky, 62 Tex. 118, 50 Am. Rep. 517, in which the city was held liable for an injury to a child who fell in an uncovered ditch which for a long time had been left open by the city along a defective sidewalk without barrier or protection. That decision was based on the violation of the common-law duty of the city to exercise reasonable care to keep the street in a reasonably safe condition for public use by pedestrians.

The following is quoted from the syllabus in City of Galveston v. Barbour, 62 Tex. 172, 50 Am. Rep. 519: "In the absence of a statute declaring the liability of a municipal corporation for injuries caused by defective sidewalks, such liability exists." To the same effect is Klein v. City of Dallas, 71 Tex. 280, 8 S. W. 90.

In Wichita Falls v. Robison, 46 S.W.(2d) 965, 966, our Supreme Court held that the city of Wichita Falls was not liable for injuries sustained by plaintiff Robison while engaged in work connected with the sanitary department of the city, because the maintenance of the sanitary department was in the interest of public health, and therefore a governmental function. In the opinion in that case, by Justice Pierson of the Supreme Court, the following is said: "It is well settled by the decisions of this court, as well as by those in other jurisdictions, that sanitation for the public health of a city is a governmental function, and that, when a city is exercising such power, it is not liable for injuries inflicted through the negligence of its officers and employees. Whitfield v. City of Paris, 84 Tex. 431, 19 S. W. 566; 15 L. R. A. 783, 31 Am. St. Rep. 69; White v. City of San Antonio, 94 Tex. 313, 60 S. W. 426; McQuillin on Municipal Corporations (2d Ed.) vol. 6, pp. 775, 776, 784, 785, and 788."

In Whitfield v. City of Paris, 84 Tex. 431, 19 S. W. 566, 15 L. R. A. 783, 31 Am. St. Rep. 69, it was held that the city was not liable for damages for an injury sustained by plaintiff as a result of being shot by a policeman in a negligent attempt to kill a dog running at large without a muzzle on one of the streets of the city, contrary to an ordinance of the city, because the enactment of such an ordinance and the appointment of a policeman to enforce the same was a governmental function undertaken in the interest of the public and as the representative of sovereignty.

In White v. City of San Antonio, 94 Tex. 313, 60 S. W. 426, it was held that the enforcement of a quarantine regulation and the establishment and maintenance of a pesthouse are peculiarly public functions, and a city is not answerable when damages are inflicted through the negligence or misconduct of its officers in the enforcement of those regulations.

We quote the following from McQuillin on Municipal Corporations (2d Ed.) vol. 6, page 897: "Municipal ownership of public utilities, in the usual and common acceptation of that term, must of necessity carry with it the same duty, responsibility and liability on account of negligence that is imposed upon and attaches to private owners of similar enterprises. For example, it is settled that a municipality which operates its own water, electric light, or gas plant acts in a private and not a governmental capacity and is liable for its negligence in connection therewith, being subject to the same rules and duties as govern and devolve upon a private corporation, co-partnership or an individual engaged in such business." To the same effect is 19 R. C. L. p. 1130.

Although it appears from the opinion of the Supreme Court in City of Wichita Falls v. Robison, 46 S.W.(2d) 965, that the city pleaded the provisions of section 139 of its charter, copied above, as exemption from the liability asserted, yet the Supreme Court decision was based upon the fact that the injury of plaintiff was sustained in the performance by the city of a governmental function solely, and not by reason of that charter provision.

The case of City of Amarillo v. Tutor (Tex. Com. App.) 267 S. W. 697, was a suit for damages resulting from a personal injury sustained by Mrs. May Tutor through the negligence of the employees of the city, while running a street car on which Mrs. Tutor was a passenger; the street car line being owned and operated by the city of Amarillo. One of the defenses offered by the city in that case was the provision of the city charter adopted under the Home Rule Statutes exempting the city from any and all liability for any injury to persons or property. In the opinion in that case, by the Commission of Appeals, it was held that that charter exemption was invalid because to give it effect would be in violation of section 13 of article 1 of our State Constitution guaranteeing to every person a remedy by due course of law for an injury done to his property or person. The same conclusion was reached in the companion case of City of Amarillo v. Green (Tex. Com. App.) 267 S. W. 702.

The case of Williams v. City of Galveston, 41 Tex. Civ. App. 63, 90 S. W. 505, was a suit for damages for personal injury resulting from the negligence of the city in the construction and maintenance of a bridge over a street in the city, and the Court of Civil Appeals at Galveston held that a charter provision of the city similar to the charter provision of the city of Wichita Falls in this suit was a valid defense to the suit. An application for writ of error in that case was refused by the Supreme Court. A like decision by the same court was rendered in Reegan v. City of Galveston, 24 S.W.(2d) 61, in which an application for a writ of error to the Supreme Court was dismissed. The latter case was a suit for damages for the death of Reegan, a motorcycle officer of the city of Galveston, as a result of coming in contact with a marker in the middle of the street, damages being sought by the widow and children of the deceased officer. In that case the decision in the Williams v. City of Galvestion, supra, was followed, and it was further held that neither of those cases was in conflict with the two decisions in Amarillo v. Tutor (Tex. Com. App.) 267 S. W. 697, and Amarillo v. Green (Tex. Com. App.) 267 S. W. 702, noted above.

In Gatz v. City of Kerrville (Tex. Civ. App.) 36 S.W.(2d) 277, 278, cited by appellant, the judgment of the trial court on an instructed verdict in favor of the city was affirmed, and a writ of error from that decision was dismissed by our Supreme Court. In that suit it appeared that Mrs. Gatz, the plaintiff, was injured while standing on a meter box of a waterworks system owned by the city and located in the sidewalk; the lid thereof was displaced in some manner, and she was injured as the result of her foot going down into the opening thus made. But the conclusion reached by the Court of Civil Appeals was that the evidence was wholly insufficient to show any facts sufficient to charge the defendant with notice of any defect in the lid, if in fact a defect existed and caused the fall. However, it was further said in that opinion that: "When the city elected to place and maintain the meter box in a much traveled sidewalk, it assumed the duty of using at least ordinary care to equip and secure it with such safeguards as were reasonably necessary to prevent injury to persons lawfully using this public way."

We have reached the conclusion that the construction and maintenance of the waterworks system in the city of Wichita Falls was not the exercise of a governmental function, but was in pursuance of a corporate enterprise, and that the alleged negligence of the city urged by the plaintiff, and the injury to her as the proximate result thereof, showed a common-law right of action for the damages she sought. To give effect to the exemption from liability by reason of article 139 of the city charter would set at naught the constitutional guaranty of article 1, §§ 13 and 29, of the Constitution, since, in the absence of a statutory right of action for the damages sued for, the only other remedy which could be asserted would be the right under the common law.

Another point is made that there could be no liability on the part of the city in view of the finding of the jury that prior to the injury the city had no notice that the meter box was unlocked. But we construe the finding in answer to issue 8, as requested by defendant, as a finding that the city, in the exercise of ordinary care, should have discovered that the meter box was unlocked and should have remedied that condition prior to the accident. In support of that contention appellant has cited McQuillin on Municipal Corporations (2d Ed.) vol. 7, p. 223, in which this is said: "Late decisions adhere strictly to the general rule that, to render a municipality liable for injuries for failure to exercise ordinary care to keep its public ways in a reasonably safe condition it must appear that it knew, or had reasonable cause to know, of the defective condition a sufficient length of time before the accident to enable it to put the way at a state of repair."

There is no evidence in the record to show how long the meter box had been unlocked prior to the accident. The city introduced no testimony tending to show that it had supplied a lock for the meter box, or that none of its employees had left it unlocked, nor when they first knew it was unlocked; or that any precautions had been taken to keep it locked. It is a familiar rule that, when plaintiff makes out a prima facie case, the burden rests upon the defendant to furnish testimony of facts peculiarly within his knowledge which would defeat a recovery, and we perceive no reason why that rule should not be applicable here. 22 Corpus Juris, p. 115; 10 R. C. L. p. 902. And, under all the facts and circumstances in the record, we conclude that the jury was authorized to find, as they did find in effect, that defendant had either actual or constructive knowledge that the meter box had been left unlocked and for a sufficient length of time to enable the city to lock or so fasten the lid as to prevent its turning when stepped on, and that the city was guilty of negligence in failing to remedy that condition before the happening of the accident in question. The following was said in City of Austin v. Ritz, 72 Tex. 399, 9 S. W. 884, 885:

"It is settled by numerous authorities that a municipal corporation cannot be held liable for injuries caused by defective streets, sidewalks, crossings, etc., unless it has actual or constructive notice of the defect. Klein v. City of Dallas [71 Tex. 280] reported in 8 S. W. 90, 92, and see note. In the note to the

above case in the Southwestern Reporter a safe rule is given, as to constructive notice, as follows: 'If a state of facts exist such that ignorance can only arise from a failure to exercise reasonable official care, notice may be inferred by the jury.'

"Notice, actual or constructive, must be left to the jury. They must determine the question as a fact, from all the circumstances. What facts will be sufficient 'to affect the corporation with the consequences of notice, —that is, what facts would amount to constructive notice,—would depend upon a variety of circumstances,—the length of time the defect had existed, its notoriety, the frequency of travel over it, and the character of the defect itself.' Klein v. City of Dallas, supra."

In Klein v. City of Dallas, 71 Tex. 280, 8 S. W. 90, 92, it is said:

"If the corporation, by the exercise of ordinary diligence, would have discovered the defect in time to have made the needed repairs before the injury, it would be affected with the consequences of notice; it would be held to have had constructive notice." Citing cases.

"Had the city itself constructed the sidewalk and ditch, no notice of a visible defect, either actual or constructive, would have been necessary."

See, also, McQuillin on Municipal Corporations (2d Ed.) vol. 7, pp. 225 to 229.

The fact that the city did not know that plaintiff would pass over the meter box at the time she did would be no defense, since it was chargeable with notice that a like accident might happen to some member of the public. See, also, T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162.

For the reasons stated, all assignments of error are overruled, and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

Mexican Central Railway Co. v. Mitten, 13 Tex. Civ. App. 653, 36 S. W. 282, was a suit for damages for personal injuries sustained by the plaintiff while a passenger on the defendant's train, resulting from the wreck of the train. In the original petition it was alleged that the wreck occurred by reason of a defective bridge. In plaintiff's amended petition, filed immediately before the trial, it was alleged that the wreck was caused by defects in the approach to the bridge. The Court of Civil Appeals held that the amended petition did not set up a new cause of action, as contended by the railroad company, and a writ of error was denied by the Supreme Court in that case.

In G., H. & S. A. Ry. Co. v. Perry, 38 Tex. Civ. App. 81, 85 S. W. 62, the Court of Civil Appeals affirmed a judgment against the railroad company for $7,000 in favor of Rose Perry for the death of Joseph Perry, her husband, who was killed while working as foreman of a section gang. In plaintiff's original petition the negligence relied on was permitting an obstruction on the track which caused a wreck of the hand car on which the deceased and the section gang were riding. In plaintiff's amended petition a new and additional ground of negligence was alleged and which was the sole basis of recovery, to wit, negligence of the section gang in failing to obey the order of the foreman to stop the car before the same reached the obstruction. The Court of Civil Appeals overruled the contention that the amended petition set up a new cause of action which was barred by the statute of limitation of two years because filed after the expiration of that period. And a writ of error to that decision was likewise refused by our Supreme Court.

The record shows that appellant's motion for a continuance was made orally without objection, and the action of the court in overruling it is shown in a proper bill of exception; but the motion contained no claim of surprise, or statement that defendant had reason to believe that testimony might probably be procured to prove that the meter box described in the amended petition was not in a defective condition, or that defendant was not negligent in failing to remedy the alleged defective condition.

Whether or not the amended petition presented a new cause of action was a question of law, and of course the motion was sufficient to present the objection that a new cause of action was pleaded, and by reason thereof the case should be continued.

We recognize the rule that, when an amended petition is filed on the eve of trial, a motion for continuance should be granted if the amendment embodies allegations of material facts not in the original petition, even though such new matter does not constitute a new cause of action, if the same operates as a surprise to the defendant and he is thereby and without negligence on his part deprived of an opportunity to present a defense to such newly alleged facts. However, it was incumbent on the defendant to show injury by reason of a denial of its motion for continuance; and since it failed to make any showing, either in its motion for new trial or at some state of the trial, that, had the case been continued and tried at another term of court, defendant could and would have produced testimony of some of its employees or from some other source which would have tended to defeat a recovery based on such new matter, no injury was shown as a result of the failure of the court to grant the continuance. T. & P. Ry. Co. v. Goldberg, 68 Tex. 685, 5 S. W. 824; I. & G.

N. Ry. Co. v. Howell, 101 Tex. 603, 111 S. W. 142; 9 Texas Jurisprudence, pp. 681 to 689, and pp. 734 to 736.

We deem it unnecessary to discuss other contentions presented in the motion for rehearing, since our conclusions thereon have been fully stated in our original opinion which we believe to be correct. And in further support of our conclusion that the exemption provision in the city charter, discussed in our original opinion, is violative of the articles of our Constitution pointed out, we cite the late decision of our Supreme Court in an opinion by Chief Justice Cureton, in Hanks v. City of Port Arthur, 48 S.W.(2d) 944. And we will note further that this suit did not involve a defective condition of a public street, as was true in some cases cited by appellant, such as Lee v. City of Dallas (Tex. Civ. App.) 267 S. W. 1014.

Accordingly, the motion for rehearing is overruled.