SHELBY WIGGINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 50753.   Promulgated January 31, 1933.

*Shelby Wiggins, Esq.*, pro se.
*Owen W. Swecker, Esq.*, for the respondent.

OPINION.

SEAWELL: The petitioner, as director of the port of the city of Beaumont, Texas, received in 1928 a salary of $7,600, which the respondent included when computing petitioner's taxable net income.

The petitioner insists the salary is exempt from Federal income tax by reason of the fact that it was paid him as an employee of the Board of Dock and Wharf Commissioners of the city of Beaumont, which he asserts was a political subdivision of the State of Texas, and that the work in which he was employed, the conduct and management of the port, was a governmental function of the Board of Dock and Wharf Commissioners.

There is no provision in the 1928 Revenue Act expressly exempting from taxation under that act compensation received as an employee of a state or political subdivision thereof. The basis of any exemption of compensation from such sources for the year 1928, therefore, must be found in the implied immunity, if any, contained in the Federal Constitution.

In *South Carolina* v. *United States*, 199 U. S. 437, is enunciated a principle, expressed in the syllabus, as follows:

The exemption of state agencies and instrumentalities from national taxation is limited to those which are of a strictly governmental character, and does not extend to those which are used by the state in carrying on an ordinary private business.

The principle so stated is recognized and followed in article 643 of Regulations 74, interpreting the 1928 Revenue Act.

In *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, the court stated:

It is no part of the essential governmental functions of a state to provide means of transportation, supply artificial light, water, and the like. These objects are often accomplished through the medium of private corporations, and though the public may derive a benefit from such operations, the companies carrying on such enterprises are nevertheless private companies, whose business is prosecuted for private emolument and advantage. For the purpose of taxation they stand upon the same footing as other private corporations upon which special franchises have been conferred.

The true distinction is between the attempted taxation of those operations of the states essential to the execution of its governmental functions, and which the state can only do itself, and those activities which are of a private character. The former, the United States may not interfere with by taxing the agencies of the state in carrying out its purposes; the latter, although regulated by the state, and exercising delegated authority, such as the right of eminent domain, are not removed from the field of legitimate Federal taxation.

How the Board of Dock and Wharf Commissioners was created and its duties were stated by the petitioner as follows, when testifying on cross-examination:

Q. Who appointed the Commissioners?
A. The Mayor, like he does in Portland.
Q. The Mayor of the City?
A. Yes, sir.

Q. What did they do? What were their duties?

A. It was to generally carry on that department of the city and district that had to do with the river and port and the wharves and the facilities and the physical properties of the port.

Q. Now why was your position created then?

A. For the reason I believe that these gentlemen were business men and they were not versed in port operation, river development, waterway development; they were not acquainted with the shipping world. It was difficult for them to take time from their duties to go down five or six times a day, or more or less, to handle various questions which are continuously coming up at ports, and if they had had time at least they stated that they did not have the training to equip them to handle it, and it was expedient that they have someone in charge of that who could handle it, or who was presumed to be able to handle it * * *.

In the light of the record in the instant case and of the law as decided in numerous cases, only a few of which are hereinafter cited, we are of the opinion and hold that the petitioner herein, while holding the position of director of the port of the city of Beaumont, was not, in the sense of the law, an officer or employee of a political subdivision of the State of Texas, nor was he, while so employed, engaged in governmental functions. The work or duties which the petitioner performed and for which he received a salary of $7,600 in 1928, and now claims exemption from income tax, were such as the Board of Dock and Wharf Commissioners aforesaid contracted with him to perform, the board itself being created or appointed by the mayor of the city of Beaumont. Neither the position held by the petitioner, the duties discharged by him, nor the salary received by him, are shown to have been prescribed by law, all being a matter of oral contract between the aforesaid board and himself, and none of his activities under his employment are shown to be the discharge of essential governmental functions of the State of Texas or any of its political subdivisions.

In *Green* v. *City of Amarillo*, 244 S. W. 241 (Court of Civil Appeals of Texas), the court said: " The city, in the operation of a street railway system, was unquestionably acting in its private and corporate capacity, as distinguished from its acts of governmental character * * *." The foregoing quotation is repeated and approved and the decision therein affirmed in *City of Amarillo* v. *Green*, 267 S. W. 702.

In *Green* v. *City of Amarillo, supra,* the court, referring to the article set out in our findings of fact which empowers cities incorporated under the " home rule amendment " (as was Beaumont) to buy, own, operate, etc., municipal railway terminals, docks, wharves, ferries, etc., stated: " It is obvious that many of the activities of a municipality, engaged in operating the public utilities mentioned in this article of the statute, do not pertain to the governmental func-

tions of the City, and necessarily many of these activities may become a matter of general public concern."

In *City of Wichita Falls* v. *Lipscomb*, 50 S. W. (2d) 867; 872 (Court of Civil Appeals of Texas), the court said:

We have reached the conclusion that the construction and maintenance of the waterworks system in the city of Wichita Falls was not the exercise of a governmental function, but was in pursuance of a corporate enterprise, and that the alleged negligence of the city urged by the plaintiff, and the injury to her as the proximate result thereof, showed a common-law right of action for the damages she sought. * * *

We have decided a number of cases in which we have applied the same principles, which are controlling and determinative of the issue in the instant case in favor of the respondent. In view of such, there is no necessity for their further discussion. See *T. P. Wittschen*, 25 B. T. A. 46; *Leland Powers, Executor*, 26 B. T. A. 1381; *C. S. Denman*, 27 B. T. A. 256; *Walter G. Winne*, 27 B. T. A. 369.

*Judgment will be entered for the respondent.*